LEADER REALTY COMPANY, Respondent, v. GEORGE D. MARKHAM et al., Appellants.

St. Louis Court of Appeals, February 6, 1912.

1. **APPELLATE PRACTICE: Reviewing Instructions: Sufficiency of Exception.** Where an exception is saved to the giving of instructions, they are open to review, on appeal, although no objection to their being given was made.

2. **PRINCIPAL AND AGENT: Giving Credit to Agent: Principal Not Liable.** If one, dealing with an agent, knowing the prin-

cipal, sees fit to give credit to the agent exclusively, he must look to the agent alone for payment, and cannot afterwards resort to the principal.

3. FIRE INSURANCE: Premium Paid to Independent Contractor: Recovery of Unearned Premium: Instructions.   In an action by insured, after the cancellation of a fire insurance policy, to recover the unearned premium, the court instructed the jury, that if they found plaintiff had contracted for and received the policy from a named person and paid him therefor, that such person obtained said policy from defendant, that defendant dealt with him as a broker and issued said policy upon his credit and not upon the credit of plaintiff, and that said policy was afterwards cancelled by defendant, without repayment to plaintiff of the amount of the unearned premium, then the verdict should be in favor of plaintiff.  *Held*, that the instruction cannot be construed as submitting that the go-between was the agent of plaintiff merely because it uses the term "broker," which implies agency, but it should be construed as submitting the hypothesis that each of the parties dealt with the go-between as an independent contractor.

4. ————: ————: ————.   Where a fire insurance agent deals with a broker as an independent contractor, and accepts his individual credit for the premium, and the insured pays the premium to the broker, such agent may not cancel the policy without repaying the unearned premium to insured.

5. PLEADING: Indefiniteness: Attack After Verdict.   Where a petition is so drawn that it might well have been made more definite and certain, but no objection is made to it, it is good after verdict.

6. FIRE INSURANCE: Premium Paid to Independent Contractor: Recovery of Unearned Premium: Pleading: Issues. Where the material fact set forth in the petition, in an action to recover the unearned premium, upon the cancellation of a fire insurance policy, was that the premium had been paid by plaintiff, and not how it was paid, an instruction, charging that, if the jury found that defendant dealt with a broker, to whom plaintiff paid the premium, as an independent contractor, and issued the policy on his credit, the verdict should be for plaintiff, was within the issues.

7. ————: ————: ————: Sufficiency of Evidence.   Where, in an action to recover the unearned premium, upon the cancellation of a fire insurance policy, there was evidence that defendant, who was the agent of the insurance company, charged the premium in question against the personal account of the broker who secured the business and collected the premium; that defendant, from time to time, received personal checks from the broker to be applied on his account; and that,

while the premium in question was not paid to defendant by the broker for more than a year, defendant made no demand against plaintiff therefor—an instruction submitting the question whether defendant dealt with the broker as an independent contractor and issued the policy on his individual credit was proper.

8. ————: ————: ————: Instructions: Conflict. In an action against an insurance agent for the unearned premium not re-paid by him upon the cancellation of a fire insurance policy, an instruction, permitting a recovery by plaintiff if the jury found that defendant extended exclusive credit, as an inde-pendent contractor, to a broker to whom plaintiff paid the premium, is not in conflict with an instruction which per-mitted a recovery if the jury found that the broker was the agent of the insurance agent in collecting the premium.

9. INSTRUCTIONS: Conflicting Theories. Where separate in-structions submitting the question of liability correctly state the law applicable to the particular facts hypothesized, they will not be deemed conflicting merely because a single instruction, embodying the various theories they present and making the question of liability depend upon a finding of the existence of the different facts upon which such theories are predicated, would be confusing as presenting contradictory theories.

10. PRINCIPAL AND AGENT: Authority of Agent: Payment: Fire Insurance. Although a broker, acting as agent for fire insurance agents, had no authority to accept notes or checks as payment of premiums, yet, if notes or checks accepted were afterwards paid, it constituted a good payment.

11. EVIDENCE: Admissions: Compromise. Statements made by a party in endeavoring to secure a compromise of a disputed claim are not admissible in evidence against him.

12. APPELLATE PRACTICE: Theory at Trial: Binding Effect: Fire Insurance. Where an action against an insurance agent for the unearned premium on a cancelled fire insurance policy was tried by both parties as though the agent was the proper party defendant, the appellate court will deal with it on the same theory, and will not determine whether the action should have been brought against the insurance company, instead of its agent.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

AFFIRMED.

Realty Co. v. Markham.

*Fordyce, Holliday & White* for appellants.

(1) The judgment should be reversed and the cause remanded as the jury was not instructed according to the true law of the case and the verdict was for the wrong party. Schmidt v. Rankin, 193 Mo. 254; Shepherd v. Transit Co., 189 Mo. 362; Porter v. Railroad, 199 Mo. 82. (2) The court erred in giving plaintiff's instruction number one, in that it submitted to the jury an issue not raised by the pleadings, contained an erroneous statement of the law, and was not based upon the evidence. Le Master v. Railroad, 122 Mo. App. 313; Bond v. Sandford, 134 Mo. App. 477; Christian v. Insurance Co., 143 Mo. 460; Veatch v. Norman, 109 Mo. App. 387; Edwards v. Ins. Co., 100 Mo. App. 695; Bradley v. Ins. Co., 90 Mo. App. 369; R. S. 1899, sec. 7997; Marland v. Ins. Co., 71 Pa. St. 393; Ins. Co. v. Minnequa, 100 Pa. St. 137; 22 Cyc., "Insurance," pp. 1444, 1445; Stone v. Ins. Co., 105 N. Y. 543; White v. Chaney, 20 Mo. App. 389. (3) The court erred in giving plaintiff's instruction number two, in that it cannot be harmonized with plaintiff's instruction number one, confused the jury as to the true law of the case, and contained an erroneous statement of law. Brokerage Co. v. Gates, 190 Mo. 391; Edwards v. Insurance Co., 100 Mo. App. 695. (4) The court erred in refusing the sixth instruction offered by the defendants. 1 Clark & Skyles, "Law of Agency," pp. 642 and 645; Buckwalter v. Craig, 55 Mo. 71; Wheeler v. Wilson, 65 Mo. 89; Ins. Co. v. Willetts, 24 Mich. 268; 2 Cooley's Briefs on the Law of Insurance, p. 996; 1 Cooley's Briefs on the Law of Insurance, p. 472; McCulloch v. McKee, 16 Pa. St. 289; 31 Cyc., "Principal & Agent," p. 1375; Gowling v. Express Co., 102 Mo. App. 366; Loy v. McClure, 124 Mo. App. 689. (4) The court erred in admitting in evidence plaintiff's exhibits "A1" to "H3" inclusive. Authorities under points

2, 3 and 4; Rider v. Culp, 68 Mo. App. 527; Moore
v. Renick, 95 Mo. App. 202. (5) The court erred in
admitting the testimony of witness Bowman as to
statements made by one of the defendants during a
conversation occurring while the parties were
endeavoring to effect a compromise of the controversy.
Rucher v. Aurora, 71 Mo. App. 418; Railroad v. Walsh,
197 Mo. 392; Cullen v. Ins. Co., 126 Mo. App. 412.

*Stern & Haberman* for respondent.

As an insurance broker may be the agent of either
the insurer or the insured and is not in law as such
the agent for the insured. Edwards v. Ins. Co., 100
Mo. App. 695; Arff v. Ins. Co., 25 N. E. 1073; Ins.
Co. v. Brooks, 83 Md. 22, 34 Atl. 373; Grady v. Ameri-
can Central, 60 Mo. 116.

STATEMENT.—The appeal in this case was prose-
cuted to this court, but it was transferred to the
Springfield Court of Appeals under the provisions of
an act of the Legislature, approved June 12, 1909.
[See Laws of Missouri 1909, p. 396; see, also, Sec.
3939, R. S. 1909.] Afterwards, the Springfield Court
of Appeals disposed of the case through an opinion
prepared by Judge Cox of that court, but this opinion
was ordered not to be published in the official reports
for the reason that about the same time the Supreme
Court declared the legislative act, which purported to
authorize the transfer of cases from one court of
appeals to another for hearing and determination, to
be unconstitutional. Because of such ruling of the
Supreme Court the case was thereafter transferred
by the Springfield Court of Appeals to this court on
the theory that the jurisdiction of the appeal con-
tinued to reside here and the proceedings had there
with reference thereto were *coram non judice.*

The case has been argued and submitted here
and duly considered. We find ourselves unable to

concur in the said opinion of Judge Cox for the reason that, following the ruling of the Supreme Court in Sheets v. Ins. Co., 226 Mo. 613, 126 S. W. 413, it was there held that the instructions given on behalf of the plaintiff were not before the court for review, the defendants having excepted to the action of the court in the giving of such instructions, but not having made any objections to their being given. As our Supreme Court has since overruled the Sheets ruling (see Harding v. Missouri Pacific R. R. Co., 232 Mo. 444, 134 S. W. 641), it is incumbent upon us to review those instructions in the light of the criticisms made of them by the defendants, as well as to consider and pass upon the other points made by the defendants.

In substance and effect, the plaintiff in its peti-tion charges that, being the holder of certain fire insurance policies issued to it in its name by insurers represented by the defendants and on account of which it had paid more than a thousand dollars in premiums, it delivered the policies to the defendants for the purpose of having the latter, as agents of the insurers, attach a mortgage clause thereto, the defendants promising to make such endorsement and then return the policies to the plaintiff. That, becoming thus possessed of the policies, the defendants did not return them to the plaintiff as they had promised, but, pretending that the premiums had not been paid thereon, on March 1, 1909, wrongfully cancelled the policies without returning to the plaintiff the unearned premiums thereon, amounting to the sum of $559.78, as in the said policies provided; all to the plaintiff's damage in the said sum, etc. The answer was a general denial.

It is unnecessary to state all the facts shown by the evidence. The right of the plaintiff to recover would, we take it, be entirely conceded but that the provision for cancellation contemplates the return of unearned premium only in the case of "the premium

having been actually paid," and the defendants con-
tend that the evidence discloses no such payment,
and that the court gave improper instructions and
refused a proper instruction on that subject.

The facts in this respect may be stated as fol-
lows: The defendants, as copartners, were the agents
for certain insurance companies. One Dana C. Sycks
had a desk in their office, which was his only place of
business, and where he received his mail, addressed
in the care of the defendants. He had been with the
defendants five or six years, first as a clerk and then
as a "broker." It was his business to solicit insurance
business from the insured and bring it to the defend-
ants as agents for the insurers and for that service
he received from the defendants part of the commis-
sions which the latter received from the insurers on
all such business, the defendants guaranteeing to him
that his earnings in that way would amount to at least
a certain amount per month. It appears that the
books of the defendants consisted of a policy register,
journal and ledger. The register contained a complete
description of the policy, including the name of the
insured, the amount of the premium, the gross com-
mission, the name of the broker and his share of the
commission. According to defendants' witnesses the
bills for premiums were always made out from the
policy register in the name of the insured, and the
charges were entered from the bills into the journal
and from the journal into the ledger. But it appeared
that all the entries in the ledger were made in the
account of Sycks, as charges against him as "broker,"
for the premiums. It also appeared that it was cus-
tomary for the policies and bills to be turned over by
the defendants' cashier to Sycks, and for him to de-
liver the policies and collect the bills. It also appeared
that Sycks made payments on this account of his as
broker, with his own checks, against his own account
in bank, after deducting his share of the commissions.

For a period of five years Sycks had been making collections and ever since he had been a broker he had been charged therefor and had been making payments by cash or checks in the manner indicated. In the latter part of 1906 the plaintiff, being desirous of procuring fire insurance, asked Sycks and another agency for a rate. Sycks made the lowest rate and plaintiff gave him that business, and thereafter gave him other business, dealing with him individually and not with the defendants. Sycks brought the business to defendants, however, and the defendants' cashier testified that he delivered all the policies to Sycks, together with bills on defendants' billheads against the plaintiff. Sycks delivered the policies to the plaintiff and rendered bills for the premiums to the plaintiff in his own name, on his own billhead. Plaintiff paid all these bills by delivering to Sycks its checks for the amounts thereof, except two bills for which plaintiff gave its notes. These checks and notes were made payable to Sycks individually and were all duly paid to him. The premium charges for all these policies appear on the books of the defendant in the manner we have indicated and in the ledger are charged to Sycks' account. Though Sycks received payment from the plaintiff for all these policies, he only paid part of it—a part which had been paid in the earlier period of his dealings with the plaintiff—to the defendants. The balance continued as a charge on the books of the defendant. In January, 1909, nearly all of it had thus continued unpaid and a charge on the books for more than a year. During all this time the defendants never sent a bill to the plaintiff or communicated with the plaintiff in any manner but contented themselves, according to the testimony of their witnesses, with handing bills to Sycks and accepting such returns or excuses as he cared to make. The defendants, however, sent on the

163 App.—21

full amount of the premiums to their principals, the insurers. In January, 1909, Sycks disappeared and in February after having, by means of collectors then sent out, ascertained what accounts Sycks had collected, one of the defendant partners procured a warrant to be issued for the arrest of Sycks for having as agent of such partner embezzled the amount charged to his account. On February 11th, defendant wrote to plaintiff's agent a letter as follows: "In accordance with your telephone message of this morning, we accept notice of loss payable to the St. Louis Union Trust Company as interest may appear under the policies covering for account of Leader Realty Company at Broadway and Washington avenue. Upon receipt of the policies proper endorsement will be made and attached thereto, and the documents returned to you." Thereupon the policies held by plaintiff were delivered to the defendants. On February 23, 1909, while the policies were in the possession of the defendants, they gave notice to the plaintiff in writing to the effect that on account of non-payment of the premiums the insurers would cancel all the policies held by the plaintiff, describing them, as of March 1, 1909, and stating that "as this cancellation is made on account of failure to pay the premiums on said policies, there will be no return upon the same." On account of this cancellation the defendants received back from the insurers which had issued the policies the sum of $619.25, being the aggregate amount of the unearned portion of the premiums on the cancelled policies, which amount and any part thereof the defendants refused to pay to the plaintiff.

At the instance of the plaintiff, the court gave two instructions as follows:

"I. If you find and believe from the evidence that policies of insurance described in the petition and in evidence were issued to the plaintiff, Leader Realty

Company, and if you find and believe from the evidence that said Leader Realty Company contracted for said policies and received the same from one Dana C. Sycks and paid him therefor, and if you further find and believe from the evidence that said Dana C. Sycks obtained said policies of insurance from the defendants, and if you further find and believe from the evidence that defendants dealt with said Dana C. Sycks, as a broker and issued said policies upon the credit of said Dana C. Sycks and not upon the credit of the Leader Realty Company, and if you further find and believe from the evidence that said policies of insurance were on March 1, 1909, cancelled by the defendants without repayment to the plaintiff of the unearned premiums thereon, then your verdict must be in favor of plaintiff and against the defendants for such sum as you may find to be the amount of such unearned premiums not exceeding the sum of $559.78 together with interest on such amount from March 1, 1909, at the rate of six per cent per annum.

"II. If you find from the evidence that defendants intrusted the policies referred to in the evidence to Dana C. Sycks for delivery to plaintiff and had authorized Sycks to collect premiums, make deductions therefrom for commissions and pay the residue over to defendants or had theretofore ratified such collections by him, and plaintiff paid said Sycks for said policies, then said payment to said Sycks was payment to defendants, and if you believe from the evidence the funds so paid were thereafter appropriated to himself by said Sycks, then said appropriation was from defendants and defendants had no right to cancel said policies upon the ground that the premiums therefor had not been paid."

The court refused an instruction offered by the defendants to the effect that payment to Sycks by checks or notes made payable to him personally was

not payment to defendants even though he was the agent of the defendants to collect premium payments.

CAULFIELD, J. (after stating the facts).—I. Defendants' chief complaint on this appeal concerns the action of the trial court in giving plaintiff's first instruction. They first assert that that instruction contains an erroneous declaration of law in that it permitted the jury to find that "defendants dealt with said Dana C. Sycks as a broker and issued said policies upon the credit of said Dana C. Sycks, and not upon the credit of the Leader Realty Company." Defendants' reasoning as to this proceeds about as follows: A "broker" is prima facie the agent of the insured. If the defendants "dealt with said Dana C. Sycks as a broker," it necessarily meant that they dealt with him as the agent of the insured "and not as an independent contractor." If, in response to this reasoning of the defendants, we accept as correct their assumption that to deal with Sycks as a broker was to deal with him as the plaintiff's agent, still it does not follow, as defendants assume, that therefore the defendants may not have "issued said policies upon the credit of said Dana C. Sycks, and not upon the credit of the Leader Realty Company," as the instruction also hypothesizes. If one dealing with an agent, knowing the principal, sees fit to give credit to the agent exclusively, he must look to the agent alone for payment and cannot afterwards resort to the principal. [Mechem on Agency, sec. 558.] But we consider the argument as to the effect of using the phrase "dealt with said Dana C. Sycks as a broker," to be without substance, a mere play upon words. It is clear from the whole context that the true hypothesis submitted is that each of the parties dealt with Sycks as an independent contractor, whatever he was called, the plaintiff getting the policies from him, and paying him for them, and the defendants delivering them to him

on his credit and not on the credit of the plaintiff. The instruction in effect tells the jury that if the defendants accepted the individual credit of the broker as a payment of the premiums, the defendants could not cancel the policy without repaying the premium to the plaintiff, the plaintiff having paid them to the broker, and this, as we understand it, is the law. [Bennett v. Maryland Fire Ins. Co., 14 Blatchf. 422; White v. Conn. Ins. Co., 120 Mass. 330.]

Defendants next suggest that as the petition contains no allegation that the defendants dealt with Sycks as an independent contractor or issued the policies on his individual credit, this instruction submitted an issue not raised by the pleadings. In this respect the substance of the issue was whether the plaintiff had paid the premiums. The material fact set forth in the petition is that the premiums were paid, not how they were paid—whether by cash direct to the defendants or to its agent, or by the defendants accepting the individual credit of the broker as payment, the plaintiff having paid him. The petition was so drawn that it might well have been made more definite and certain in its averments as to payment of the premiums, but no objection was made to it, and it is good after verdict. We hold that the hypothesis submitted by this instruction was within the issue of payment raised by the pleading. We also hold that there was evidence tending to support it. There was evidence to the effect that the defendants charged the premiums to the broker's personal account and from time to time received his personal checks to the credit of this account. Also that though most of these premiums were not paid to the defendants for more than a year the defendants made no claim or demand to plaintiff on account thereof. It is true that the weight of the evidence seems to favor the idea that Sycks was the agent of the defendants in collecting the premiums

from the plaintiff; but there was sufficient evidence favoring the theory that the defendants extended the credit to him alone to justify submitting that theory to the jury.

Nor are we inclined to agree with the defendants' counsel that this instruction, which submits the question whether defendants dealt with Sycks as a broker and extended credit to him exclusively, is in conflict with the second instruction, which submits the question whether Sycks collected from the plaintiff as the agent of defendants. If the two instructions had made defendants' liability depend upon a finding of both hypotheses they might be held confusing and contradictory because perhaps the defendants could not have dealt with Sycks as a broker extending credit to him alone as stated in the first instruction, and at the same time had him as their agent to collect from the plaintiff as stated in the second instruction, but these instructions are not subject to that criticism. One permits the defendants to be held liable if the first state of facts is found, the other recognizes such liability if the second state of facts is found. Each correctly states the law as applied to the particular facts hypothesized and neither contradicts the other. The jury could not possibly have been confused or misled by these instructions. [See, as having some bearing on this question, Dawson v. Quillen, 61 Mo. App. 672, 678; Barton v. City of Odessa, 109 Mo. App. 76, 82 S. W. 1119.]

II. We agree with the Springfield Court of Appeals in its holding, expressed and discussed in its opinion above mentioned, that the instruction offered by the defendant was properly refused; for though Sycks as agent of the defendants to receive payment of the premiums, if he was such, had no implied authority to accept notes or checks by way of payment, still if the checks and notes which he accepted

were paid, as they were in this case, it was a good payment. [Mechem on Agency, Sec. 381.]

III. As to the alleged error in the admission of testimony, we adopt that portion of the aforesaid opinion of the Springfield Court of Appeals which reads as follows: ''The error assigned in the admission of testimony is that witness Bowman was allowed to testify as to certain statements made by one of the defendants. The ground of this contention is that the statements were made in the course of a conversation in which the parties were attempting to effect a compromise. It is well settled that the statements of a party made in an effort to secure a compromise of a disputed claim cannot be used as evidence against him in a trial subsequent thereto, but upon reading the record in this case we find that the testimony offered does not come within this rule for the reason that the witness stated at the time of giving the testimony that in the first conversation between them in which the statements were made nothing was said about a compromise and, therefore, no error was committed in admitting this testimony.''

IV. We may add that we have not considered the circumstance that the plaintiff has sued the agents of the insurers instead of suing the insurers themselves, because from the inception of the case the parties have proceeded as if that were proper, and as if the defendants, having had the dealings the record discloses and having done the wrongful cancelling, were the responsible parties. We feel justified in dealing with the case in that respect as they have dealt with it, and have given this feature no consideration and express no opinion thereon. The judgment is affirmed. *Reyolds, P. J.,* and *Nortoni, J.,* concur.