[Civ. No. 6465. First Appellate District, Division One.—January 15, 1929.]

MARY MARDEROSIAN, as Administratrix, etc., Respondent, v. NATIONAL CASUALTY COMPANY (a Corporation), Appellant.

Gallaher & Jertberg for Appellant.

Theodore M. Stuart for Respondent.

CAMPBELL, J., *pro tem.*—This appeal is from a judgment in the sum of $1,250 found to be due to plaintiff on a policy of insurance issued by defendant to Parsiag Marderosian, who died as the result of an accident, and of whose estate plaintiff is administratrix.

The action was submitted to the trial court upon an agreed statement of facts, and is based upon a contract for accident insurance entered into between P. Marderosian in his lifetime and the defendant. Appellant contends that the judgment in favor of plaintiff is contrary to the stipulated facts and contrary to the law applicable to such facts.

The stipulated facts summarized as briefly as they may be to an understanding of the issues presented are, that in the month of December, 1925, the defendant and the Fresno "Bee," a newspaper published and circulated in the county of Fresno, entered into a written contract containing the following provisions: "Said party of the second part (Casualty Company) agrees to issue to said newspaper 'Travel Only' policies to all those certain readers or subscribers of the newspaper published by said party of the first part (Fresno Bee) whose names and addresses are listed upon blank schedules furnished by said party of the second part for that purpose. Such schedules are to be delivered to a registrar agent to be named by said party of the second part; upon receipt of such schedules said

registrar agent shall immediately issue and forward to each person listed upon such schedule a policy to be known hereafter as the 'Fresno Bee Travel and Pedestrian Accident Policy ' . . . Said party of the second part agrees upon receipt of such schedules to have its registrar agent stamp the hour of receipt by him of such schedules and to endorse an acceptance for said party of the second part upon one copy of each quadruplicate set of schedules and to immediately return such endorsed copy to said party of the first part . . . It is further understood and agreed that the insurance under all such policies shall become effective as of 12 o'clock noon, standard time of the day following the date that the schedule bearing the name of each insured is received and endorsed by said register agent and shall continue in force for one year subject to cancellation as hereinafter set out." Pursuant to such contract entered into between the Fresno "Bee" and the National Casualty Company, which is the only insurance company that issues insurance through the Fresno "Bee," appellant appointed J. V. Hollett, the circulation manager of the "Bee," its registrar agent, and an insurance agent's license to represent appellant was issued to J. V. Hollett by the insurance commissioner of the state of California. On or about January 8, 1927, the solicitor for the "Bee" called at Marderosian's home, three miles from the city of Fresno, and solicited his subscription to the "Bee," and as an inducement explained the insurance to Marderosian and delivered him a circular reading on the front page: "Through arrangement with the National Casualty Company of Detroit, Michigan, one of the oldest and most reliable accident insurance companies in the world, the Fresno Bee now offers all subscribers (new or old) a $7,500 travel accident insurance policy for only $1 a year—over $12,000 already paid Bee subscribers—no medical examination necessary—four policies ranging in price from 50c to $1.25—full particulars contained in this issue." On the inside of the circular there is a description of the four policies numbered 1, 2, 3, and 4, the amounts payable for various injuries under the policies and the premiums charged. The prospective insured is cautioned to "examine the coverage in above policies then select the one you prefer—mention number of policy selected in the coupon when making your application. If you wish to secure addi-

tional policies for other members of your family write for additional application blanks to the Fresno Bee Insurance Department, Fresno, California.'' Then appears the warning: ''Do not wait until the accident happens. Do it today! Avail yourself of the opportunity to protect yourself before and not after.'' There is then printed on the circular that subscribers ''may take advantage of any of the travel accident policies by filling out the coupon below and mail with the price of the policy to the Fresno Bee.'' After explaining this circular to Marderosian the solicitor handed him a blank form of the ''Insurance Policy Contract'' and advised Marderosian that if he became a subscriber to the ''Bee'' he could take out such insurance whenever he desired. Following such conversation Marderosian gave the solicitor his subscription for the ''Bee'' and remained a regular subscriber at the time of his injury and death. On the afternoon of January 17, 1927, Marderosian filled out and signed the ''Insurance Policy Contract'' and delivered it, together with the sum of $1.25—the specified premium—to the carrier, and notified him it was ''for the purpose of accepting insurance under said policy No. 2,'' which contract and money was accepted by the carrier, who told Marderosian his policy would be mailed to him. The carrier did not return to the ''Bee'' office until the morning of January 18th, when he took Marderosian's contract and money to the office of the auto route manager, as he was instructed to do, but as the manager was away the carrier left the contract and money on the manager's desk, as he had customarily done. The manager was away from his office and did not return until the morning of January 19th, when he found the Marderosian contract and money, and thereupon, in accordance with the usual business custom of the ''Bee,'' the manager delivered the Marderosian contract and money to the insurance department of the ''Bee,'' and thereupon Marderosian's name was listed upon the ''Schedule'' (mentioned in the contract between the ''Bee'' and the defendant), which ''Schedule'' was thereupon signed by Hollett and the Policy No. 2 of the defendant company was about noon of the 19th issued to P. Marderosian and mailed to him. On January 18th, about 6:15 P. M., while Marderosian was walking on a public highway, he was accidently struck by an automobile and received injuries from which he died at about 4 o'clock

on the afternoon of January 19th. The "Bee," in the usual course of business, remitted to the defendant the premium on the Marderosian policy, but the defendant, on February 21, 1927, denied all liability and returned the premium, but the plaintiff administratrix refused to accept the check, and it was sent back to the defendant. Neither the solicitor of the "Bee," who sought and procured Marderosian's subscription, nor Marderosian, ever knew of or had ever heard of the contract between the "Bee" and the defendant or knew anything concerning its terms, provisions, or conditions, or ever knew of any contract between the "Bee" and defendant. Marderosian was in every way qualified to procure insurance under "Policy No. 2" and no physical examination was required. The general course of business in the issuance by said "Bee" of policies of insurance in the defendant company is that, following the execution of the contract between the "Bee" and the defendant, the defendant delivered to the "Bee" a large number of blank forms of its insurance policies, including "Policy No. 2," upon which the signatures of the defendant's president and secretary were engraved, and the "said Bee in issuing one of said policies simply filled in the name, age, and address of the insured on page 1 of the policy, and filled in the date at the end of the policy, and said Hollett, or a clerk designated by him, then signed the same with Hollett's name as 'resident agent,' and the policy was then mailed to the insured." By this method, which had always been followed by the "Bee," it had, up to January 17, 1927, issued and delivered 11,000 of defendant's policies on which defendant had paid losses aggregating over $12,000. Each of these policies was dated on the date it was countersigned. The method followed by the employees of the "Bee" concerning the subscription and insurance of Marderosian "was the usual and general course of business of said Bee in said matters, and but for the fact that the said Sehers (said Auto Route Manager) was away from Fresno when the carrier of the Bee delivered Marderosian's 'signed insurance contract' and money to Sehers' desk, the schedule bearing Marderosian's name would have been signed by Hollett and the policy for Marderosian would have been completed, countersigned by Hollett and mailed to Marderosian on or about noon of January 18th, 1927" six hours before his injury.

■ Appellant contends that under the provisions of the contract the company constituted Hollett, the circulation manager of the "Bee," and not the "Bee," its agent. In this we do not agree with appellant. On the contrary, the contract clearly discloses that the "Bee" was made appellant's general agent under the authorities cited. The recitals or the inducement for the execution of the contract declares that the "Bee" "is desirous of securing an agency for the sale" of certain insurance policies of a kind the defendant is duly licensed to write in California. In other words, the "Bee" became a sales agent of the defendant. The defendant not only gave the "Bee" a large number of its policies to sell but made the "Bee" agree to sell not less than 2,000 during the first year. We also find that the contract contains the usual clause found in such contracts by which the "Bee" agrees to forward all information relative to claims, and the company on its part agrees to promptly investigate and dispose of all claims on the merits. Furthermore the "United States Managers" of the defendant were given power to supervise all advertising matter the "Bee" used in its campaign to sell defendant's policies. Under this provision, in the absence of any contention or showing to the contrary, we must assume that the "United States Managers" performed their duty in passing upon the advertising matter used by the "Bee" and approved of the particular form of circular that was delivered by the "Bee" solicitor to Marderosian and found such circular complied with the state insurance laws. The contract also obligates the "Bee" not to sell insurance issued by any other company and in return defendant obligates itself not to issue such insurance through any other newspaper in Fresno. When the contract containing the foregoing excerpts is read in connection with the stipulated facts, no conclusion can be reached other than that the "Bee" was constituted a general agent for the defendant company.

■ Appellant calls attention to the provision in the contract which recites that the policies to be issued should become effective at noon "of the day following the date" the schedule is received and indorsed by the registrar agent. The stipulated facts show that both parties totally ignored this provision. The facts show that up to January 17th the "Bee" had issued and delivered over 11,000

policies and "each and all of these policies was dated on the date it was countersigned." According to Marderosian's policy "Exhibit E," it became effective at noon of the, day it was dated. So that in dealing with over 11,000 applicants for policies "the day following" clause was waived by both the insurer and the general agent. It appears that the "Bee" had even greater powers than are ordinarily vested in a "general agent," as that term is defined in the authorities cited.

As to the fact that the "Bee" had no license from the insurance commissioner, it may be said that the failure to secure such license is no defense in an action by an insured against an insurance company upon an insurance contract (*Goldstone* v. *Columbia Life & Trust Co.*, 33 Cal. App. 119 [164 Pac. 416]).

Under the agreed facts the defendant fully vested the "Bee" with ostensible authority to do everything that it and its employees did in making the contract of insurance with Marderosian (Civ. Code, secs. 1317, 2334). Such ostensible authority alone is sufficient to fix defendant's liability (1 Cal. Jur. 737).

The Fresno "Bee" was authorized to take risks and enter into contracts of insurance without consulting the defendant company and was, therefore, a general agent of defendant.

Again, this is not a case where a person seeks insurance by going to the insurance company, signing an application and submitting to the usual physical examination. On the contrary, the insurance sought the person and no application or physical examination was required. When the solicitor of the "Bee" took Marderosian's subscription to the paper and solicited him to take the insurance, explained and handed him the pamphlet describing the same, together with the form of "Insurance Policy Contract" for him to sign, it constituted the offer of insurance by a general agent; and when Marderosian completed and signed the "Insurance Policy Contract," which contained no notice when the policy would become effective, and delivered it to the carrier of the "Bee," together with $1.25 as the full first year's premium, it constituted an acceptance, and a binding contract came into existence between Marderosian, as the insured, and the defendant company as the insurer.

■ Where a valid parol contract of insurance has been entered into, the policy to be issued thereon is simply the memorial of the prior parol contract, and even though the policy be not delivered until after the loss occurs, the insurance is deemed effective from the time agreed upon in the parol agreement, irrespective of any delivery of the policy (*Crawford* v. *Trans-Atlantic Fire Ins. Co.,* 125 Cal. 609 [58 Pac. 177]). "If an agent, authorized to accept risks, accept a risk by parol, promising to deliver the policy, the insurance begins with the acceptance, and the contract in parol continues until the policy is delivered, when it is superseded by the policy" (*Ferrar* v. *Western Assur. Co.,* 30 Cal. App. 491 [159 Pac. 609]). ■ Where the assured has no notice of any limitation on the powers of the general agent, any act within the scope of the insurance business is binding on the insurance company, although it is in fact in violation of the agent's authority (*Wheaton* v. *North British & M. Ins. Co.,* 76 Cal. 415 [9 Am. St. Rep. 216, 18 Pac. 758]; *Farnum* v. *Phoenix Ins. Co.,* 83 Cal. 246 [17 Am. St. Rep. 233, 23 Pac. 869]). "Every indulgence not inconsistent with the plain meaning of the contract must be shown the assured" (*Raulet* v. *Northwestern Nat. Ins. Co.,* 157 Cal. 213 [107 Pac. 292]).

The authorities cited by appellant are not inconsistent with the views here expressed, as the facts in these cases are not analogous to the stipulated facts in the present case.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.