Jo Carol BRAND, Appellant,

v.

INTERNATIONAL INVESTORS INSURANCE COMPANY, Appellee.

No. 45649.

Court of Appeals of Oklahoma, Division 2.

Jan. 22, 1974.

Rehearing Denied March 15, 1974.

William L. Anderson, Oklahoma City, for appellant.

James T. Farha, Oklahoma City, for appellee.

BRIGHTMIRE, Presiding Judge.

On May 15, 1968, defendant—an Oklahoma City insurance company—sent an agent out to sell young Steve Brand a life insurance policy. Steve, who planned to marry plaintiff Jo Carol on May 25, agreed to buy a $10,000 policy. The agent routinely filled in the application form showing applicant to be in good health and designating plaintiff as beneficiary. Steve signed it and gave the agent a check postdated to June 1 for the full first premium. The agent accepted the check as payment, told Steve he would be accepted as a risk and executed a receipt reciting he had received the sum of $20.62 from Steve. Though he had agreed to wait until June 1 to cash the check he forgot and deposited it prematurely—on May 18. Of course it bounced with Steve's account being debited $2.00 for bank handling charges—a charge which the agent repaid to plaintiff and her husband on May 31 with regrets for the error and the explanation that the insurance coverage would take effect June 1. So alleged plaintiff.

Then on Monday, June 3, 1968, Steve was seriously injured in an accident. The insurance agent heard about the misfortune and promptly transmitted the information to defendant's home office. Company officials said the policy matter would be "taken care of."

And so it was.

Steve died the next day on June 4. This event evoked a sudden surge of diligence in defendant's "taking care of" the application. The company promptly dispatched a special delivery letter to plaintiff—a letter she received June 6, just before her husband's funeral, expressing sorrow about Steve's death and adding that because of it his application for insurance had been "rejected" !

So . . . the widowed Jo Carol Brand initiated this action to enforce payment of the $10,000 life insurance on Steve's life she contends defendant agreed to cover him with effective June 1, 1968.

During the pleading stage at a time when a "Second Demurrer" to the "Second Amended Petition" as amended was awaiting decision, defendant filed a "Motion for Summary Judgment." In this motion defendant asked the court to summarily adjudicate the cause and declare defendant the winner "upon the pleadings" because: (1) language in the application signed by Steve recites defendant "shall incur no liability . . . until it [the application] has been received and approved, a policy has been issued and delivered"; (2) the application gives 60 days "to examine said application to determine applicant's insurability, before the policy terms are enforceable"—a period not yet run out when applicant died; (3) plaintiff's reliance upon a provision in the application that policy is in effect from date of application if premium is paid and receipted for as was done in this case is not justified because petition alleges that "a post-dated check was given delaying payment of first full premium until June 1, 1968"; (4) the petition "alleges that no receipt was issued . . . probably because of a 'notice' printed" on it saying " 'Do not detach unless full first premium is paid with application' "; (5) plaintiff "cannot bring an action upon a commit-

ment which was never, in fact, made to [applicant]. That is the receipt which he never received."

The court sustained this motion. The only basis given for the ruling was that "having examined the pleadings and a copy of the application for insurance that is a part thereof, and being otherwise fully advised in the premises" the court "finds that the defendant's motion should be sustained for the following reasons: . . . ." The reasons given were the same as those described in the motion.

What the court in effect did was treat the summary judgment motion as a demurrer and sustain it on the basis of what he considered to be a failure of plaintiff's petition to state a cause of action. Certainly this is not the office of a motion for summary judgment. The motion occupies a narrow nitch in our legal procedure—namely one where there exists a complete absence of a material fact issue and movant is entitled to judgment as a matter of law. 12 O.S. Ch. 2 App. Rule 13.

So far in this case defendant has denied none of the allegations made by plaintiff. We therefore treat the lower court order as a ruling on a demurrer to the petition and determine if the pleading states facts sufficient to warrant plaintiff's recovery of what she prays for—facts which we must assume are true for this purpose.

We have already mentioned several significant factual allegations. Before reciting more it would be well to identify precisely the basis upon which defendant rests the defense of its judgment, for this will narrow the scope of inquiry into plaintiff's single general "argument," namely, that she has pleaded facts sufficient to entitle her to the relief sought. Defendant's two defensive propositions are: (1) "Full payment of the initial premium was an express condition precedent to liability on the part of defendant, and the same was never performed nor waived"; (2) "Defendant is not bound by the act of its agent, Eldon Williams, in accepting a post-dated check."

First of all among the relevant general legal principles are these. An insurer having solicited and obtained application for a life insurance policy along with the first premium payment has a duty to act on the application with diligence and within a reasonable time. Republic Nat'l Life Ins. Co. v. Chilcoat, Okl., 368 P.2d 821 (1961). An applicant's suit seeking recovery because unreasonable delay in acting on his application for life insurance may found his claim on breach of an implied promise to act within a reasonable time, or he may waive the contract and sue in tort for negligence in failing to pass on the application with due diligence. Peddicord v. Prudential Ins. Co., Okl., 498 P.2d 1388 (1972). Whether the delay in processing an application in a given case was unreasonable or resulted from a lack of due diligence is a question of fact for the jury to resolve. Republic Nat'l Life v. Chilcoat, supra; Columbian Nat'l Life Ins. Co. v. Lemmons, 96 Okl. 228, 222 P. 255 (1923).

It is also established that a soliciting agent of insurer is the insurer's agent in taking applications and he is clothed with power and authority to bind his principal with the acts he performs, or knowledge he receives or imparts in connection with the application absent fraud or collusion. Northwestern Mut. Ins. Co. v. Richardson, Okl., 470 P.2d 330 (1970).

With regard to the question of premium payment it has been held that the giving of a post-dated check in payment of the initial premium on an insurance policy constitutes good payment. Republic Life and Accident Ins. Co. v. Hatcher, 244 Ky. 574, 51 S.W.2d 922 (1932). There the court mentioned that the check was an enforceable and negotiable instrument when written, it was not post-dated for any illegal purpose, and therefore the instrument amounted to a lawful premium payment when accepted as such by insurer's agent. Similar result reached in Courdway v. People's Mut. Life Ins. Co., 118 Cal.App. 530, 5 P.2d 453 (1931) and National Union Fire Ins. Co. v.

Wright, 163 Ark. 42, 257 S.W. 753 (1924). These cases suggest that in terms of insurance premium payment, post-dated checks are subject to the same rules generally applied to coeval-dated checks—those bearing the date of making.

■ It is universally recognized that an insurer, like any other merchant, is not required to take a check in payment of its product if it wishes not to. But if it does so its rights fall under the influence of two basic consequential principles relevant to our review here. The first is that an insurer's acceptance of an honorable check as payment of a premium is, in its legal effect, the same as the receipt of cash absent an express contra admonition. Republic Nat'l Life Ins. Co. v. Chilcoat, supra; Leader Realty Co. v. Markham, 163 Mo. App. 314, 143 S.W. 1104 (1912); Tooker v. Security Trust Co., 165 N.Y. 608, 58 N. E. 1093 (1900). This we can call the good check rule.

■■ The other is the bad check rule relating to bills dishonored upon proper presentation. It is that a personal check taken in payment of a life insurance premium "is conditional, in the absence of contrary intention, upon due payment of the check, and the burden is upon the insured or his beneficiary to prove a contrary intention on the part of the insurer" if he asserts one exists. Central States Life Ins. Co. v. Johnson, 181 Okl. 367, 73 P.2d 1152 (1937). See also Phillips v. Lagaly, 214 F.2d 527, 50 A.L.R.2d 626 (10th Cir. 1954). However, it is recognized in this jurisdiction as well as others that the insurer may pursue a course of conduct estopping it from denying that it accepted a check or draft unconditionally as payment. Mutual Life Ins. Co. v. Chattanooga Sav. Bank, 47 Okl. 748, 150 P. 190, L.R.A.1916A 669 (1915).

■ One realizes after reviewing these two primal rules that the facts here cannot be juxtaposed with either. It is alleged by plaintiff that despite the inadvertant premature deposition of her deceased husband's check, "on May 31, 1968, the agent of the defendant delivered the $2.00 [bank charge for handling the bill] to plaintiff and her husband, stating his check was deposited through error and would be redeposited as instructed and that the policy would be effective as of June 1, 1968." June 1 was a Saturday, however, and early Monday morning, June 3, before the check could be deposited, defendant's agent learned and promptly notified defendant of the serious injuries which had befallen insured. The insurer held up cashing the check—apparently in pursuance of a newly adopted wait and see policy. It clung to the check and returned it not until learning of Steve's loss of life on June 4. It was only then that defendant "rejected" the application. We think if true these facts depict conduct many might find repugnant to good morals, ethics, and sound law.

In our opinion a variation of the good check rule applies to the facts here. It must be presumed that Steve's check would have been honored had it been deposited on June 1 as the defendant agreed to do. And had it been there would be no great difficulty about the disposition of this case. Its facts would then fall comfortably within the ambit of the holdings discussed earlier—that is they give rise to a jury question of whether defendant unreasonably delayed processing Steve's application.

For the bad check rule to emerge in this case it will be necessary for defendant to plead and prove that Steve's check would have been dishonored if presented on June 1. Such proof will have to overcome not only the contrary presumption but the inferences arising from terms of the application—payment of first full premium on date of application and issuance of receipt shall effectuate coverage liability as stated in the receipt,[1] namely, the coverage shall

---

1. "However, if the full first premium specified in the application on the policy applied for is paid on the date of this application and the receipt bearing the same serial number as this application is issued to Proposed Insured, then the liability of the Company shall be as stated in the receipt and the receipt made a part hereof. (2) The Company shall

be effective the date of the receipt or the completion of any required medical examination.[2] Both the application and receipt contain unclear dates evidently because of being changed from June 1, 1968—the effective date of the check—to May 14, 1968. This mystery as well as others can be solved, if at all, only by trial. At this time what issues will arise cannot be foreseen simply because the case is still a legal infant.

■ Furthermore plaintiff's allegations sufficiently embrace another cause of action—an oral contract of the contemplated life coverage "effective as of June 1, 1968," based upon a promise made by defendant's agent to plaintiff "that he would be accepted" when he filled out the application form, took Steve's post-dated check for the first premium, and induced Steve to let a similar policy with "Penn Mutual" lapse. A valid verbal contract of insur-

ance can be entered into and where one is, a written policy later issued in accord with it is but a "memorial of the prior parol contract." Hence though the written policy be not delivered, insurance coverage there is dating from the oral pact. Marderosian v. National Cas. Co., 96 Cal.App. 295, 273 P. 1093, 1096 (1929). See also Crawford v. Trans-Atlantic Fire Ins. Co., 125 Cal. 609, 58 P. 177 (1899).

As we said earlier this review concerns the sustaining of a demurrer to plaintiff's petition by the lower tribunal. We have not the benefit of evidence which pre-trial discovery or trial will bring. But whatever it is it should be assessed and measured by the foregoing views.

Order sustaining summary judgment is vacated and cause remanded with directions to proceed according to law.

BACON and NEPTUNE, JJ., concur.

---

have sixty (60) days from the date of receipt of the application at its Home Office in Oklahoma City, Oklahoma, (which is agreed to be a reasonable period) to determine the insurability of Proposed Insured on the basis on which application is made or on another basis. If the policy is not received by the undersigned(s) within that period the application will be deemed to have been declined by the Company. (3) Only the President, a Vice President, Secretary or an Assistant Secretary of the Company can modify or discharge contracts or waive any of the Company's rights or requirements and then only in writing. No statement, representation or promise made by any other person shall be binding upon the Company. (4) The Company is authorized to amend the application in the space entitled 'Home Office Additions or Corrections' and acceptance by the Proposed Insured of any policy issued on this application shall constitute ratification of any such amendments."

2. "RECEIPT
DO NOT DETACH UNLESS FULL FIRST PREMIUM IS PAID WITH APPLICATION        No. 1291
Received from Steve Bennett Brand the sum of Twenty & 62/100 ($20.62) Dollars for the full first premium specified in the application for insurance in the International Investors Insurance Company which bears the same date and serial number as this re-

ceipt. The insurance under the policy for which application is made shall be effective on the date of this receipt or the date of completion of the medical examination (if, and when required by the Company), whichever is the later date, if in the opinion of the authorized Officers of the Company at its Home Office in Oklahoma City, Oklahoma, the Proposed Insured is insurable and acceptable for insurance under the rules and practices on the plan of insurance, for the amount of insurance, and at the premium rate set forth in the application, exclusive of any amendments in the space for 'Home Office Additions or Corrections'. However, even if the Proposed Insured is so insurable and acceptable, the maximum liability of the Company under this receipt and other insurance in force in this Company shall be $50,000 or the amount of said other insurance, whichever is greater. If the Proposed Insured is not so insurable and acceptable the Company has no liability under this receipt, and the above payment will be returned, by the Company's check, upon surrender of this receipt. This receipt shall be void if given for check or draft which is not honored on presentation. "Company shall have 60 days from date of application to consider and act upon application. Failure of the Company to offer a policy within such 60 days shall be deemed a declination.
May
June   14, 1968    s/Eldon Williams   Agent"