## MANNHEIM INS. CO. v. HOLLANDER.

### (District Court, S. D. New York. December 26, 1901.)

1. MARINE INSURANCE—NOTICE TO BROKERS AS AFFECTING UNDERWRITER.

    Insurance brokers, who undertake to procure insurance for a shipping agent or a shipowner, and do so, placing it with different companies, while they are agents for one of the companies issuing a policy for the collection of the premiums, are not its agents in respect to matters con- nected with the issuance of the policy, but the agents of the insured, and notice to them that the application, though in the name of the agent, was made on behalf of the shipowner, does not bind the com- pany, which, in the absence of actual knowledge of such fact, is justi- fied in issuing the policy in the name of the applicant, and in treating him as the insured.[1]

2. SAME—LIABILITY FOR PREMIUMS—INSURABLE INTEREST.

    Respondent conducted business as a shipping agent, and was also president and principal stockholder in a steamship company, the office of the two concerns being together. Insurance brokers applied to libel- ant in respondent's name for insurance, and a policy was issued in his name covering shipments on certain vessels of the company between certain ports for a year, "on account of whom it may concern," loss, if any, payable to respondent or order. Held, that respondent could not avoid liability for premiums earned under such policy on the ground that the insurance was in fact effected on behalf of the steamship com- pany, and that he had no insurable interest, the terms of the policy being sufficiently broad to entitle the company to avail itself of the benefit of the insurance if a loss had occurred, and respondent, moreover, having an insurable interest in the risks covered by reason of his large holding of the company's stock.

3. SAME—LIABILITY OF ASSURED TO UNDERWRITER FOR PREMIUMS—BROKER'S RELATION TO PARTIES.

    In the absence of proof of the existence of a usage, such as prevails in England, that a marine insurance broker who procures a policy of insurance for a client is alone liable to the underwriter for payment of the premium thereon, and must himself look to the assured, the ordi- nary rule governs in this country, and the assured becomes the debtor of the underwriter for such premiums.

In Admiralty. Action to recover premiums on insurance policies.

Eustace Conway, for libelant.

Butler, Notman, Joline & Mynderse, F. M. Brown, and A. G. Thacher, for respondent.

[1] Marine insurance, see notes to The Dunbritton, 19 C. C. A. 465; Pacific Mail S. S. Co. v. New York, H. & R. Min. Co., 20 C. C. A. 357.

ADAMS, District Judge. This is an action to recover certain sums, amounting to $512.94, alleged to be due from Alexander Hollander, sole member of the firm of Alexander Hollander & Co., as premiums on two policies of insurance, dated, respectively, May 3, 1900, and June 21, 1900, issued to Alexander Hollander & Co., "on account of whom it may concern, * * * loss, if any, payable to Alexander Hollander & Co. or order," covering shipments on steamer Orion from April 24, 1900, to April 24, 1901, or the Evelyn as a substitute, and on the steamer Michigan from June 6, 1900, to June 6, 1901, during voyages at and from New York to Mobile and/or Galveston, and while on dock awaiting delivery at Mobile. The liability is denied by the respondent, who alleges that the contracts were made in the interest of the Hollander Steamship Company, a corporation engaged in the business of common carriers, and that the policies were issued to Alexander Hollander & Co. by mistake. It appears that Mr. Hollander was president and the largest stockholder of the said steamship company, which had offices in the building known as "90–92 Beaver Street," New York. He was also doing business in the name of Alexander Hollander & Co., as freight agents of the Baltimore & Ohio Railroad Company and the Central Railroad Company of New Jersey, with practically the same offices. It is contended by him that there was no connection between his business as freight agent and as president of the steamship company. The insurance business of the respondent and of the steamship company, prior to the transactions involved in this claim, was in the hands of Hayward & Wreaks, insurance brokers, who, in February, 1900, obtained insurance for Alexander Hollander & Co. from the libelant, "to cover goods of their own or in which they may have an interest, or which they may be instructed to insure. * * * Per vessel or vessels * * * at and from ports and places in the United States to any and all ports and places in all parts of the world." In March, 1900, the same brokers obtained somewhat similar insurance to that in question here from the libelant upon the steamships Orion and Catania for the Hollander Steamship Company, the certificates under the policy being issued for "Hollander Steamship Company." Shortly thereafter Johnson & Higgins, insurance brokers in New York, made overtures to Mr. Hollander for the business, offering more favorable terms. They were represented by a Mr. Hopkins, who, at the instance of Mr. Richardson, the general manager of the steamship company, called upon Mr. Hollander, and was by him referred to Mr. Richardson, with the statement that the latter had charge of all insurance matters, and that he, Mr. Hollander, preferred that arrangements should be made with Mr. Richardson. After that time all negotiations were carried on by Mr. Richardson, who had several conversations with Mr. Hopkins. The latter testified that he understood he was dealing with Alexander Hollander & Co., who had insurable interests to be covered; and this is confirmed by the correspondence which ensued, the greater portion of which, on the part of Johnson & Higgins, being addressed to Alexander Hollander & Co., both prior to the insurance being effected and for some time thereafter. On the

other hand, bills for the premiums were rendered in June, 1900, by Johnson & Higgins to "Messrs. Hollander S. S. Co.," and were partially paid by checks of the Hollander Steamship Company. Letters relating to the insurance were also sent by Johnson & Higgins to Mr. Richardson, as general manager "Hollander Line," which was a trade name for the Hollander Steamship Company, but not so known to the libelant. It does not appear that the libelant was informed that it was dealing with any other party than the one in whose name the insurance was effected, or put upon inquiry in the matter. Prior to the insurance in question, the libelant had issued insurance on one of the same steamers, the Orion, and on another steamer, the Catania, to the Hollander Steamship Company, and had sent bills for the premiums to that company, and the respondent urges that the libelant should have known that the policies in question were issued in a wrong name. The circumstances, however, do not seem sufficient to sustain the contention. So far as the libelant was concerned, the issuance of policies to Alexander Hollander & Co. were new transactions. The applications for the policies were in the name of Alexander Hollander & Co., and the policies were so issued and accepted by Johnson & Higgins. Applications for particular items of insurance under the policies were also made by Johnson & Higgins in the name of Alexander Hollander & Co., and granted by the libelant. Nothing appears in the case which would affect the libelant with knowledge that the respondent was acting in a representative capacity in applying for and obtaining the insurance. The libelant was dealing through Johnson & Higgins, and doubtless they were its agents in the collection of the premiums; but in the ordinary course of the business relating to the issuance of the policies, Johnson & Higgins were not its agents, but the agents of the assured. Insurance Co. v. Thomas, 34 C. C. A. 240, 92 Fed. 127, 47 L. R. A. 450. The case at bar is not one of an agent of an insurance company soliciting the business, or one in which the agent acted in a capacity which would render the insurance company liable for his acts or knowledge. Johnson & Higgins were not connected with the libelant, nor authorized in any way to issue insurance for it. They obtained the business from the respondent, and distributed it among numerous underwriters, of which the libelant was one, receiving for their compensation certain commissions, which they deducted from the premiums before they were paid to the underwriters. The assured had employed Johnson & Higgins to place the insurance. When applications were made in the name of Alexander Hollander & Co., and policies in that name were accepted by them, and insurance subsequently obtained under the policies, the libelant was not required to inquire any further.

It is further urged by the respondent that he had no insurable interest under the policies, and that for such reason there can be no recovery. It is true, of course, that in the absence of a consideration for the premiums there would be no liability, but such failure of consideration is not established by the respondent's statements that he had no interest. As I find there was no mistake in issuing the policies to Alexander Hollander & Co., it follows that the re-

spondent entered into contracts for the payment of premiums for insurance actually effected "for account of whom it may concern." This clause is broad enough to cover almost every conceivable interest, and, in case of loss, he might have brought an action in his own name for the benefit of himself or others, or others interested would have had a right of recovery. 2 Pars. Mar. Ins. 442–444. The oldest known form of marine policy provided: "Sia noto et manifesto ad ogni persona, come * * * di * * * si fa assicurare sopra * * * mercanzia a lui attenente, o di altri suoi amici, o a chi altri attenesse cariche * * *. (Be it known and made manifest to all persons that * * * of * * * makes assurance on * * * merchandise belonging to him or his friends or to whomsoever the same may belong * * *.)" Lown. Mar. Ins. 233. And the more modern phrase contained in the policies under consideration certainly covered business interests belonging to the respondent or his friends, which would have been the subjects of recovery from the underwriters if losses had occurred. It was not necessary that such interests should exist at the time of effecting the policies. Rhind v. Wilkinson, 2 Taunt. 237. Moreover, the fact that the respondent was at least seven-tenths owner of the Hollander Steamship Company, and in the closest business relations with it, would of itself seem to establish an insurable interest in him (Seaman v. Insurance Co. [C. C.] 18 Fed. 250, 5 McCrary, 558; Id., 21 Fed. 778), if that were necessary, and it is not disputed that the Hollander Steamship Company became entitled to receive the benefits of the insurance. It does not, therefore, after the expiration of the risks, avail the respondent to say that he had no insurable interest.

It is claimed by the respondent that the libelant should look to Johnson & Higgins for their premiums, on the ground that they were the authors of a mistake between the parties as to the name of the assured; but as I have found that there was no mistake between the parties to this action, such contention cannot prevail. Under the English usage, the broker alone would be liable to the underwriter for the premiums; because, as between the assured and the underwriter, the premiums are considered paid. The underwriter, to whom, in most instances, the assured are unknown, looks to the broker for payment, and he to the assured. The latter pays the premiums to the broker only, who is a middleman between the assured and the underwriter. But he is not merely an agent; he is a principal to receive the money from the assured and pay it to the underwriter. Hence the general rule there is that, as regards premiums, the broker is the debtor of the underwriter, and the assured is the debtor of the broker. As regards losses, the underwriter is the debtor of the assured. Arn. Ins. (7th Ed.) § 106. No such usage, however, has been proved as existing here, and the ordinary rule that the assured was the debtor of the underwriter must govern.

Decree for libelant.