No. 31,523

The Ocean Accident and Guarantee Corporation, Limited, *Appellant*, v. The Emporia Telephone Company, *Appellee*.

(29 P. 2d 1084.)

Opinion filed March 10, 1934.

*W. S. Kretsinger*, of Emporia, for the appellant.
*Gilbert H. Frith*, of Emporia, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action to recover the earned premium on an insurance policy canceled within the term for which it was written. Defendant, contending it had paid for the full term, sought, by cross petition, to recover the unearned portion of the premium. Trial was to the court upon an agreed statement of facts. Judgment was for defendant, as prayed, and plaintiff has appealed.

The petition, aside from formal matters, alleged that at the special instance and request of defendant plaintiff executed and delivered to defendant a certain policy of indemnity insurance, that defendant failed to pay plaintiff the premium thereon, and by reason of such failure plaintiff canceled the policy on a date named, and that there is due plaintiff from defendant, for the term the policy was in force, the sum of $239.03, for which it prayed judgment.

By the terms of the policy plaintiff, the insurer, agreed (1) to insure defendant against loss by reason of liability imposed by law on account of accidental injury to its employees, (2) to investigate such accidents, (3) to pay cost and expense incurred investigating and litigating them, and (4) to reimburse insured for medical expenses, all with certain limitations and exclusions. "Said agreements are made in consideration of the declarations forming a part hereof and the payment of the premium herein provided." The "declarations" consisted, for the most part, of questions and answers material to the risk, with a "description of business or work covered by this policy and classification of risk . . ." This set out the classification of the insured's employees, their estimated remuneration for the policy term, the premium rate, and the deposit premium for each class of employees, and "total deposit premium, $575.81." By the terms of the policy, these "declarations," the insured, "by the acceptance of this policy, makes and warrants to be true." . By the policy, also, the premium was subject to adjustment at the termination of the policy, or annually, and if the premium, then computed as provided in the policy, should exceed the deposit premium, the insured would pay the insurer the difference; if less, the insurer would return the excess of the deposit premium to the insured.

In its answer and cross petition defendant alleged that it paid to the plaintiff the sum of $575.81, which was the premium on the policy for a term of one year; that plaintiff canceled the policy prior to the expiration of the year; that the premium for the time the policy was in force amounted to $239.03; that, having paid plaintiff the premium for a full year and plaintiff having canceled the policy, it had received no value for the unexpired term and was entitled to the return of $336.78, for which it prayed judgment. The reply was a general denial. The following is the agreed statement of facts:

"The parties hereto agree that the following statements are facts in this case, and further agree that upon such statements the court may render such judgment as it deems right:

"1. Plaintiff is a corporation, existing under the laws of the state of New York, with its post-office address in the city of New York, and as such corporation is engaged in the business of writing and selling policies of insurance against loss by accident or casualty, and is authorized to do business in the state of Kansas. That defendant is a corporation authorized under the laws of the state of Kansas, engaged in the business of operating telephone exchanges.

"2. That James W. St. Clair, operating under the trade name of The Emporia Insurance Company, is acting as an insurance broker and insurance agent in the city of Emporia. As an insurance broker he undertakes to obtain from companies which he does not represent as agent, policies of insurance which persons may desire. Said James W. St. Clair was not an agent for the plaintiff.

"3. That on or about the ———— day of ————, 1931, the Emporia Telephone Company desired to obtain a policy of insurance indemnifying it against loss through accident or casualty in connection with some work it was then doing, and accordingly requested said St. Clair to procure such a policy. Said St. Clair did procure such a policy from the plaintiff on or about the ———— day of ————, 1931, and delivered the same to the defendant. That said defendant at the time paid to said St. Clair the premium thereon for a period of one year, amounting to $575.81, which St. Clair failed to remit to plaintiff and which plaintiff never received. Said St. Clair had no specific authority from the plaintiff to receive or accept such premium for it. On the other hand, said St. Clair had no directions from the plaintiff not to do so. That this was St. Clair's only transaction with plaintiff.

"4. That on or about the 15th day of February, 1932, and before said policy had by its terms expired, plaintiff canceled the same.

"5. That the premium for the time said policy was in force before cancellation amounted to $239.03; that the amount of the premium for the term unexpired after plaintiff canceled the policy amounted to $336.78.

"6. That at the time of the cancellation of the policy plaintiff did not return to defendant the premium for the unexpired term. Defendant has paid nothing to plaintiff except the payment to St. Clair as above set forth."

The only question before us is whether the broker, St. Clair, was authorized to receive payment of the premium. A broker is, of course, the agent of the person who employs him. For purposes which are not in conflict, and when authorized to do so, he may represent both parties to a transaction. Defendant requested the broker, St. Clair, to procure for it certain insurance, and thereby made him its agent for that purpose. A broker so employed usually is regarded as the agent also of the insurer for the purpose of delivering the policy and collecting the premium. (*Rosedale Securities Co. v. Home Ins. Co.*, 120 Kan. 415, 418, 243 Pac. 1023.)

In *East Texas Fire Ins. Co. v. Brown*, 82 Tex. 631, 18 S. W. 713, it was said:

"An insurance broker is regarded as the agent for the insurer as to the premium, but for nothing else." (p. 636.)

In *Allen et al. v. G. A. Ins. Co.*, 123 N. Y. 6, 25 N. E. 309, the question arose as to the authority of a broker to waive terms of a policy as to additional insurance. In denying such authority the court said:

". . . Noble had no relations whatever with the defendant, other than that he forwarded this paper-writing, which contained statements of the amount of insurance proposed for, and of the privileges desired. He certainly appears to have been nothing more than an insurance broker, soliciting insurance business, and when, upon the acceptance of the risk, he received back a policy of the company for the plaintiff, his sole office was simply to deliver it for the company, and to collect the premium. . . . He was a conduit between it and plaintiff for the delivery of the policy and its renewals and the collection of the premiums, and to that extent, it may be said, he was an agent, . . ." (pp. 15, 16.)

In *Fredman v. Consolidated Fire & Marine Ins. Co.,* 104 Minn. 76, 181 N. W. 446, it was said:

"A broker was generally held to represent the company for the purpose of collecting the premiums, but he probably had no power at common law to secure the payment of a premium; that is, he could not accept payment in anything but cash." (p. 81.)

See, also, *S. B. T. Mfg. Co. v. Dakota F. & M. Ins. Co.,* 2 S. D. 17, 48 N. W. 310; *Arthurholt v. Fire Ins. Co., Appellant,* 159 Pa. St. 1, 28 Atl. 197; *Am. Fire Ins. Co. v. Brooks,* 83 Md. 22, 34 Atl. 373; *Wytheville Ins. & Banking Co. v. Teiger,* 90 Va. 277, 18 S. E. 195; *United Firemen's Ins. Co. v. Thomas,* 92 Fed. 127; *Realty Co. v. Markham,* 163 Mo. App. 314, 143 S. W. 1104; and cases collected in the annotation, 85 A. L. R. 749, 762, and in American Digest System, "Insurance," § 186 (3).

In several of the states by statute an insurance broker is made the agent of the insurer for all purposes, or for purposes other than for delivery of the policy and receiving payment of the premium. With no effort to make the list complete, see *Mishiloff v. American Central Ins. Co.,* 102 Conn. 370, 128 Atl. 33; *Am. Fire Ins. Co. v. King Lumber & Mfg. Co.,* 74 Fla. 130, 77 So. 168; *Investment Co. v. Fire Ins. Co.,* 190 Ia. 1135, 181 N. W. 446; *Lauze v. Fire Insurance Co.,* 74 N. H. 334, 68 Atl. 31; *Witt v. Employers Liability Assur. Corp.,* 198 Wis. 561, 225 N. W. 174.

We have no statute of that particular kind, but have one which reads:

"An insurance agent or broker who acts in negotiating or renewing or continuing a contract of insurance by an insurance company lawfully doing business in this state, and who receives any money or substitute for money as a premium for such a contract from the insured, whether he shall be entitled to an interest in same or otherwise, shall be deemed to hold such premium in trust for the company making the contract. If he fails to pay the same over to the company after written demand made upon him therefor, less his com-

mission and any deductions, to which by the written consent of the company he may be entitled, such failure shall be *prima facie* evidence that he has used or applied the said premium for a purpose other than paying the same over to the company, and upon conviction thereof he shall be deemed guilty of larceny and punished accordingly." (R. S. 1931 Supp. 40-247.)

With respect to collecting premiums this statute appears to recognize the general rule that a broker is the agent of the insurer for the purposes of delivering a policy and receiving payment of the premium. It places him on the same basis as an agent in respect to a premium paid him by the insured. He holds the premium "in trust for" the insurer, and his failure to pay the same, less his commission, to the insurer is larceny.

Appellant cites *Pottsville Mut. Fire Ins. Co. v. Minnequa Springs Imp., to use, &c.*, 100 Pa. St. 137, where, under facts quite similar to those here, it was held the insured had paid his own agent. But this holding has been greatly weakened by subsequent decisions. (*Gosch v. Firemen's Ins. Co., Appellant*, 33 Pa. Super. Ct. 496; *Riley v. Insurance Co.*, 110 Pa. 144, 1 Atl. 528; *Lebanon Mutual Ins. Co. v. Erb*, 112 Pa. 149, 4 Atl. 8; and *Arthurholt v. Fire Ins. Co., Appellant*, supra.)

In this last case it was said:

"It ought to be held that . . . By the very fact of issuing a policy which requires, apparently, nothing but delivery and payment of premium to put it in force, the company arms every man into whose hands it may come with the power to receive its money; . . ." (p. 9.)

This later rule was followed in *Peretzman v. Ins. Co. of State of Pa., Appel.*, 258 Pa. 319, 102 Atl. 22, and *Transcontinental Oil Co. v. Atlas A. Co.*, 278 Pa. 558, 123 Atl. 497.

Appellant cites *Manheim Ins. Co. v. Hollander*, 112 Fed. 549. We think it not applicable here. It deals with a question of marine insurance and points out that under the English usage, later embodied in an English statute (Marine Insurance Act, 1906, § 53), the broker alone was liable to the underwriter for the premium. It seems the custom does not exist in the United States (19 A. & E. Encyl. of L. 2d ed. 979), although it may be established by proof. (*Harrison v. Birrell*, 58 Or. 410, 115 Pac. 141.) In England that custom never prevailed in fire insurance, which was more on a cash basis, premiums usually being paid in advance. (Richards on Insurance, p. 94, n. 10.) Perhaps the general rule in this country is that the broker is not liable to the insurer for the premium unless

he receives it from the insured. (*Columbia Ins. Co. v. Loeb's Ins. Agency*, 187 Ill. App. 289.) But this question is not before us.

Naturally the primary obligation of the insured is to pay the premium to the insurer. He may discharge that obligation by making the payment to insurer's agent (26 C. J. 62). Payment to a broker is sufficient if the broker is an agent of the company authorized to receive such payments (32 C. J. 1199; 14 R. C. L. 962). In *National Hotel Co. v. Merchants' Fire A. Corp.*, 183 Ill. App. 71, it was held:

"Where an insurance company delivers its policy to the insured through brokers to whom the insured pays the premium, the company is liable on the policy though it does not receive the premium paid, where the facts show that it clothed such brokers with apparent authority to receive the premium from the insured." (Syl. ¶ 1.)

To the same effect is *Michael v. Nashville Ins. Co.*, 61 La. 737, where defendant intrusted the policy to an "itinerant broker" for delivery to plaintiff, who paid the premium to the broker on delivery of the policy.

Turning to the general law of agency, the latest authoritative treatise on that subject is by the American Law Institute. In its "Restatement of the Law of Agency," under the subtitle, "Authorization to Receive Payment" (§ 71), the rule is thus stated:

"Unless otherwise agreed, authority to receive payment is inferred from authority to conduct a transaction if the receipt of payment is incidental to such a transaction, usually accompanies it, or is a reasonably necessary means for accomplishing it."

One of the "declarations" of the policy issued in this case contains the statement, "Total deposit premium, $575.81." This declaration the insured, by the acceptance of the policy, made and warranted to be true. Also by the terms of the policy the liabilities of the insurer were not to be in effect "until payment of the premium herein provided." By the agreed statement of facts in this case the broker St. Clair procured the policy from plaintiff and delivered the same to the defendant. Obviously it was intended that the policy should go into effect upon its delivery. Plaintiff in this action predicates its suit upon the premise that it did go into effect at the time of delivery and continued in effect until it was canceled. Otherwise there would be no basis for an "earned" premium. Applying these facts to the rule above stated, the receipt of the payment by the broker St. Clair was incidental to the transaction. It

usually accompanies it, as is shown by the authorities previously referred to, and it was a necessary means for accomplishing the business therein being transacted. In fact, it was essential to put the policy in force. It necessarily follows, therefore, that the broker St. Clair, under the general rules of agency, was authorized by plaintiff to receive the premium from the defendant. Having so received it, he held it in trust for plaintiff, under our statute (R. S. 1931 Supp. 40-247). Defendant, having paid the premium to one authorized by plaintiff to deliver the policy and to receive the premium, is not further liable to plaintiff.

It necessarily follows that the judgment of the court below should be affirmed. It is so ordered.