**Owen W. MARKEL, Executor of the Estates of Raymond E. King and Yvonne King, Deceased, Plaintiff-Appellee,**

v.

**The TRAVELERS INSURANCE COMPANY, Defendant-Appellant.**

**No. 74–1211.**

United States Court of Appeals, Tenth Circuit.

Argued Nov. 15, 1974.

Decided Feb. 24, 1975.

Lawrence McDonough, Wichita, Kan. (Leonard A. Levand, and Jochems, Sargent & Blaes, Wichita, Kan., on the brief), for plaintiff-appellee.

John T. Conlee, Wichita, Kan. (Donald R. Newkirk, and Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., of counsel, on the brief), for defendant-appellant.

Before LEWIS, Chief Judge, and BREITENSTEIN and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a contract action brought by the executor of the estate of a deceased insured against an insurance company to recover the death benefits provided by a special travel accident policy. Jurisdiction is based on diversity of citizenship. The insurance company defended on two grounds: (1) There was no valid renewal of the policy in question; and (2) assuming that the policy was effectively renewed, the policy had been cancelled prior to the death of the insured.

The trial court, sitting without a jury, found that the policy had been renewed, and that cancellation, though initiated, had not been completed prior to the death of the insured. Accordingly, the trial court entered judgment in favor of the executor and against the insurance company for the face amount of the policy, namely $60,000. The insurance company now appeals. The facts as developed upon trial are in our view all important, and hence will be summarized in some detail. The root of the present problem arises from the intransigent nature of computers and the time lag which resulted therefrom.

In January 1962, Despard & Company, Inc., an insurance broker and a general agent for Travelers Insurance Company, made arrangements with American Express to make travel accident insurance coverage available to holders of American Express credit cards. Under the arrangement the cardholder could purchase a Travelex Special policy from Travelers through American Express with the yearly premium payments billed on his American Express charge account. Pursuant to such arrangement, early in 1962 American Express notified its cardholders of the availability of such insurance, and in response thereto Raymond E. King, an American Express cardholder, made application. Thereafter, on June 11, 1962, King was issued a Travelex Special policy in the face amount of $60,-000 insuring against various accidental injuries and loss of life while traveling. The policy was for a term of one year and provided that it could be renewed by payment of the annual premium, subject to the consent of Travelers. King renewed his policy annually through June 11, 1969, the latter renewal placing into effect a policy expiring on June 11, 1970. The present controversy concerns the events occurring immediately before and after the June 11, 1970, renewal date.

The agreement between Travelers and American Express provided that all applications and payments of premiums would be channeled by American Express through Despard to Travelers. The agreement further provided that American Express would give Travelers advance written notice of the date of, and the reason for, any discontinuance by American Express of its responsibility for payment to Travelers of the premium due on any policy. Notwithstanding this provision, American Express never did contact an insured *prior* to the renewal date to determine if the insured desired to renew. Consistent with such practice, American Express did not contact King prior to June 11, 1970, to ascertain whether King wanted to renew his policy with Travelers.

The renewal procedure in the instant case was initiated by Travelers on or about May 1, 1970, when it notified Despard of a number of policies which would be coming up for renewal in June 1970, including the policy issued King. It was not until June 30, 1970, however, that Despard billed American Express for the premiums due on policies expiring in June 1970. Despard did this by preparing and forwarding to American Express a "record of charge" card on each premium due, including that due on the King policy. When this "record of charge" card was received by American Express, the premium charges and other information contained therein were fed into its computer and the cardholders then received the "record of charge" as notice the premium had been billed for another year. The evidence disclosed that the actual billing of a cardholder for a renewal premium charge occurred anytime from one week in advance of the anniversary date of the policy to as

much as thirty to forty days after the anniversary date, depending upon the cardholder's place in the billing cycle of the American Express computer.

American Express first sent King a monthly statement showing a charge of $63 for renewal of the Travelers policy on July 24, 1970. On July 27, 1970, American Express paid Despard's earlier billing, which included the premium due on the King policy, although American Express itself had at that time received no remittance from King. American Express, incidentally, deducted a 15% "service charge" from all premium payments thus remitted to Despard. On August 3, 1970, Despard made a remittance to Travelers, which included the premium due on the King policy. Despard itself deducted 5% of the total premium before remitting to Travelers as its commission. At this point in time, then, Travelers had received the premium due on the King policy even though King had not himself paid American Express the charge made on his account for the renewal premium, and had actually given no indication as to whether he in fact desired to renew the policy for another year.

On August 13, 1970, American Express received back King's account statement with the notation: "Do not renew, R. E. King." This was forwarded by American Express to Despard, who received it on September 8, 1970. That same day Despard prepared a credit for the amount of the $63 previously paid by American Express and sent such to American Express to apply to King's account. Despard also returned King's notation not to renew to American Express, and the latter eventually forwarded it to Travelers. In the meantime, American Express in its August billing continued to bill King for the $63 representing the renewal premium on the policy. King did not pay this billing. American Express in its September billing again charged King for the $63. This was not paid either.

On October 2, 1970, King and his wife, who was the beneficiary under the poli-

cy, were killed in an airplane crash in the Colorado mountains. On October 7, 1970, American Express sent King a statement stamped "final notice," which statement included the $63 charge for the renewal premium, and warned King as follows:

"Your account is dangerously overdue and may be cancelled. Send us your check immediately to avoid cancellation and the addition of delinquency charges on your account."

On the same day, October 7, 1970, American Express also prepared and sent a letter to King concerning his account which contained the following statement:

"According to our files, your payment of $111.21 covering the balance due on your account as of October 2, 1970, is now more than two months overdue, despite several reminders from us."

On October 9, 1970, the King Construction Company, Inc., with which King had been associated, issued its check to American Express in the amount of $111.21, which sum included the $63 premium charge. This check was later negotiated by American Express.

On October 29, 1970, American Express forwarded to King a statement of account, showing a credit balance of $48, which reflected a credit of $63 for the annual premium due on the policy.

The records of Travelers did not disclose when Travelers itself first received notice from American Express that King did not desire to renew his policy. However, it is agreed that there was nothing in Travelers' file as of October 2, 1970, to indicate a cancellation of King's policy. And the records affirmatively disclosed that it was not until December 23, 1970, that Travelers finally allowed Despard credit for the $63 which Travelers had previously received from Despard to cover the premium due on the King policy.

As mentioned at the outset, the trial court found that under the rather peculiar facts and circumstances of the in-

stant case the policy had been effectively renewed *prior* to the time when King first indicated that he did not want to renew. King's later declaration that he did not want the policy renewed was viewed by the trial court as only a request for cancellation which had not been acted on by Travelers prior to King's death. It was on this basis that the trial court concluded that the policy was in force and effect on October 2, 1970, the date when King was killed in the plane crash.

■ We are in general accord with the trial court's resolution of the matter. The trial court's findings of fact are supported by the record and by no stretch of the imagination could such findings be characterized as clearly erroneous. It was agreed by the parties that the instant dispute was governed by Kansas law, and we are not inclined to disturb the trial court's conclusions as to the applicable Kansas law on the issues of renewal and cancellation of an insurance policy. Let us look more closely at these related issues of renewal and cancellation.

Travelers argues that though it made an "offer to renew," there was no "acceptance" of that offer by King, and that under hornbook law a contract for the year in question never came into being. In our view the facts of this case do not permit such a simplistic resolution of the matter.

The Travelers policy provides that the policy is renewable at the option of the company only, and that subject to such consent of the company, the policy may be renewed "by the payment, prior to the expiration of the grace period * * of the premium." We would parenthetically note that there is no contention here that the policy lapsed because there was no payment of premium prior to the expiration of the grace period.

So, under the terms of the policy, if Travelers consents to a renewal, the renewal is effected by a payment of the premium. It is conceded that Travelers consented to a renewal of the King policy. Such was manifested in early May 1970 when Travelers sent its agent, Despard, renewal notices of a group of policies, including King's, having June 1970 expiration dates. Such consent was reaffirmed when on June 30, 1970, Despard billed American Express for policies expiring in June, which billing included the premium due on King's policy. There was testimony that Travelers itself regarded the policy as in effect beyond the expiration date, even though American Express had not itself made payment to Despard. The obligation to pay incurred by American Express was itself sufficient to prevent the policy from lapsing.

In any event, when American Express paid Despard on July 27, 1970, the renewal premium due on the King policy, Travelers, as of that date, at least, most certainly deemed the King policy to have been renewed. And no doubt this belief on the part of Travelers was strengthened when Travelers itself received the King renewal premium from Despard on August 3, 1970. By that date, King had been billed by American Express in the July billing for the renewal premium, although it was not until August 13, 1970, or thereabouts, that King first advised American Express of his desire not to renew.

As indicated, the trial court found that Travelers had consented to the renewal, and that such renewal was accomplished when American Express paid Travelers, through Despard, the renewal premium. We agree with this finding. Indeed, Travelers' own employees agreed not only that there was no lapse in the King policy, but that under the circumstances the policy had in fact been renewed.

■■ The fact that King himself had not paid American Express when the latter made its remittance to Despard on July 27, 1970, is not significant. Fidelity & Casualty Co. v. Willey, 80 F. 497 (3d Cir. 1897). American Express had made the premium payment on behalf of its cardholder, and had extended credit to its cardholder. The general rule would appear to be that when an insurance agent pays the insurance company the

premium due on a policy, and such payment is accepted by the insurance company, the latter will be bound. Western Casualty & Surety Company v. Lund, 234 F.2d 916 (10th Cir. 1956); Stuyvesant Ins. Co. v. Sussex Fire Ins. Co., 90 F.2d 281 (3d Cir. 1937); and American Nat. Ins. Co. v. Gregg, 123 Colo. 476, 231 P.2d 467 (1951).

Having concluded that the trial court's finding of renewal finds support in the record, there remains the question of cancellation. The trial court regarded King's statement of August 13, 1970, that he did not desire to renew as only an attempt to cancel, requiring affirmative action by Travelers before cancellation could become effective. Travelers not having agreed to such cancellation prior to King's death, the trial court concluded that the policy was in force and effect as of the insured's death. Indeed, as of the date of King's death Travelers had not even received notice of King's intent, let alone acted on it.

■■■ The policy itself does not have a provision relating to cancellation and how it can be effected. Some policies of this type have a clause which permits the insured to cancel the policy at any time, with or without the consent of the insurance company. This, however, is not the instant case. Where, as here, the policy is silent as to cancellation, the trial court concluded that neither party to the contract could withdraw therefrom or cancel it without the consent, be it express or implied, of the other. This would appear to be the general rule, i.e., there must be a *mutual* agreement to cancel. Penn. Mut. Life Ins. Co. v. Ashton, 93 F.2d 565 (10th Cir. 1937); Riddle v. Rankin, 146 Kan. 316, 69 P.2d 722 (1937). And in relying upon cancellation, the insurance company of course has the burden of proving such. Blomquist v. Grays Harbor County Medical Serv. Corp., 48 Wash.2d 718, 296 P.2d 319 (1956). In the instant case the trial court found that Travelers had failed to establish cancellation, and that there was no manifestation of assent from Travelers till sometime subsequent to King's death. We agree. The record is quite clear that King's desire not to renew was not acted on in any way by Travelers till after October 2, 1970.

■■■ Travelers argues that Despard, however, did receive notice of King's desire not to renew prior to October 2, 1970, and that Despard, acting as agent for Travelers, had manifested an assent to cancellation of the renewed policy. Despard was a general agent for Travelers, though under the terms of the policy here involved it had "no authority to change this policy or to waive any of its provisions." In this connection, however, the trial court concluded that the applicable Kansas law was that the authority of a general agent to *sell* insurance did not carry with it the authority to *cancel* an existing policy. We are disinclined to disturb the trial court's conclusion as to Kansas law on this particular matter, which would appear to be in accord with the general rule. In this regard *see*, for example, American Ins. Co. v. Jamison Agency, Inc., 501 F.2d 1125 (8th Cir. 1974); Dupeck v. Union Insurance Company of America, 329 F.2d 548 (8th Cir. 1964); Western Casualty & Surety Company v. Lund, 234 F.2d 916 (10th Cir. 1956); and Equity Mut. Ins. Co. v. General Casualty Co. of America, 139 F.2d 723 (10th Cir. 1944).

■■■ There is some suggestion here that as a matter of *fact* Despard had express authority to cancel insurance. In this regard, however, an admission was made by a Travelers' representative in pre-trial discovery that Despard had no such authority. This admission was made a part of the record in the trial of the matter. On such state of the record, we find no error in the trial court's specific finding that "Despard had no authority to cancel insurance policies issued by Travelers Insurance Company."

Judgment affirmed.