No. 33,064

EDGAR G. HUDSON, *Appellant*, v. THE TRAVELERS INSURANCE COMPANY, *Appellee.*

(67 P. 2d 593)

Opinion filed May 8, 1937.

*Harry W. Hart, Glenn Porter, Enos E. Hook, Getto McDonald, Dwight S. Wallace,* all of Wichita, *W. H. Von der Heiden, A. E. Morgan* and *C. A. Morgan,* all of Newton, for the appellant.

*C. H. Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, Wayne Coulson* and *Paul R. Kitch,* all of Wichita, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: The action was on an accident policy. Defendant's demurrer to plaintiff's petition was sustained, and plaintiff appeals.

The policy sued on purports to provide "indemnity for loss of life, limb, sight and time, caused by bodily injuries effected through accidental means, to the extent herein provided."

The policy states that the defendant company "does hereby insure Edgar G. Hudson . . . against loss resulting from bodily injuries, effected directly and independently of all other causes, through accidental means, . . . as specified in the following

schedule, subject to the provisions and limitations hereinafter contained."

The policy provides that "the principal sum of this policy is $3,750" and that "the single weekly indemnity is twenty-five and no/100 dollars."

Part A of the policy provides:

"If such injuries shall wholly and continuously disable the insured from the date of accident from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous disability but within two hundred weeks from the date of accident, shall result independently and exclusively of all other causes in any one of the losses enumerated in this part, or within ninety days from the date of the accident, irrespective of total disability, result in like manner in any one of such losses, the company will pay the sum set opposite such loss and in addition weekly indemnity as provided in part B to the date of death, dismemberment, or loss of sight; but only one of the amounts so specified in the additional weekly indemnity will be paid for injuries resulting from one accident."

Then follows a schedule which provides that for loss of either hand or foot the defendant would pay one half of the principal sum. At the end of this schedule appears this sentence: "The payment in any such case shall end this policy."

Part B of the policy provides:

"Or, if such injuries, independently and exclusively of all other causes, shall wholly and continuously disable the insured from the date of accident from performing any and every kind of duty pertaining to his occupation, the company will pay, so long as the insured lives and suffers such total disability, weekly indemnity at the rate hereinbefore specified.

"Or, if such injuries, independently and exclusively of all other causes, shall wholly and continuously disable the insured from date of accident from performing one or more important daily duties pertaining to his occupation, or for like continuous disability following total loss of time, the company will pay during the period of such disability, but not exceeding twenty-six consecutive weeks, a weekly indemnity of one half of the sum specified in this part for total loss of time. No payment of weekly indemnity shall be made in case of any loss enumerated in part A, except as therein provided."

Plaintiff in his petition alleges three separate causes of action.

In his first cause of action plaintiff demands judgment for $7,100, covering the following specific items:

| | |
|---|---:|
| Loss of left hand | $1,875 |
| Weekly indemnity for 202 weeks at $25 | 5,050 |
| Surgical benefits | 50 |
| Additional indemnity while in hospital, ten weeks at $12.50, | 125 |
| | $7,100 |

The second cause of action alleges total disability resulting from accidental injury; that at the time of the accident the plaintiff was 39 years of age; that his life expectancy was 28%0 years; that plaintiff is entitled to recover for said period of time at $25 per week, making a total of $37,570.

The third cause alleges that certain controversies and contentions have arisen between plaintiff and defendant as to the authority of defendant's agent to receive premiums after the due date thereof and as to whether defendant waived the prompt payment of premiums on the policy. That by reason of the matters alleged plaintiff is in a dilemma and there is uncertainty and insecurity attendant upon the controversy, and plaintiff prays for a declaratory judgment and for further relief.

Defendant demurred to plaintiff's petition upon the ground that several causes of action were improperly joined, and upon the ground that none of the causes of action contained allegations sufficient to constitute a cause of action. The court sustained the demurrer, and plaintiff appeals.

Part A of the policy quoted above provides for the payment of the amount set opposite the specific loss "and in addition weekly indemnity as provided in part B to the date of death, dismemberment, or loss of sight; but only one of the amounts so specified and the additional weekly indemnity will be paid for injuries resulting from one accident."

Part B provides that in case of total disability the company will pay as long as the insured lives and suffers such total disability, a weekly indemnity of twenty-five dollars.

Plaintiff claims that under a proper construction of the terms of the policy that as plaintiff had suffered the loss of a hand, and in addition had suffered total disability, he would be entitled to recover weekly indemnity for such total disability so long as he might live and suffer such total disability, in addition to one half of the principal sum for the loss of his left hand.

Defendant points to the language in part A which specifically provides that before insured can be entitled to the gross sum contained in the schedule in part A his accidental injuries must "wholly and continuously disable the insured from the date of accident from performing any and every kind of duty pertaining to his occupation," although no particular length of total disability is required. Defendant insists that this clause completely negatives any intent

that if insured was totally disabled from any loss specified in part A he could recover both the gross sum for specific loss in part A and the weekly indemnity under part B for total disability. That he was required to be totally disabled for some time, at least, before he could recover the gross sum for the specific loss.

Defendant concedes that part A does provide for the payment of weekly indemnity, as well as the sum in gross, but only "to the date of death, dismemberment, or loss of sight." Hence, as the petition of plaintiff alleges that plaintiff's hand was amputated upon the day he sustained his accidental injuries he is entitled to no weekly indemnity. Defendant claims this view is strengthened by the clause in part A, following the schedule of specific losses, that "the payment in any such case shall end this policy"; that this clause eliminates any possible construction that the contract permitted the insured to recover the weekly indemnity under part B after being paid the gross sum for specific loss under part A.

Defendant further says:

"Finally, part B, which provides for weekly indemnity for total and partial disability, contains the express provision that 'no payment of weekly indemnity shall be made in case of any loss enumerated in part A, except as therein provided.' There is nothing ambiguous or uncertain about this provision. It means that no weekly indemnity shall be paid in case of any loss enumerated in part A, except that as provided in part A weekly indemnity will be paid between the date of the accident and the date of death, dismemberment, or loss of sight."

A photostatic reproduction of the policy attached to the counter abstract and brief of defendant reveals that in part A of the policy, immediately following the schedule of losses, is a definition of the meaning of the word "loss" as used in the policy. Just below the definition clause appears in small distinct black type these words:

"The payment in any such case shall end this policy."

At the end of part B appears this clause: "No payment of weekly indemnity shall be made in case of any loss enumerated in part A, except as therein provided."

We are clear that under the terms of the policy the plaintiff is not entitled to recover the weekly indemnity in part B in addition to the sum in gross provided for in the schedule in part A. To hold otherwise we would be compelled to ignore the plain language of the contract. We have examined the cases cited by counsel, but as in no instance has the language in the instruments construed been identical with the policy before us, they are not especially helpful.

It is urged that if the policy be construed to mean that compensation for the injuries specifically enumerated excludes the weekly indemnity for the secondary consequences, that such interpretation will greatly narrow the operation of the total disability clause in part B. If we admit this suggestion to be true, it would not justify this court in modifying the contract to meet the objection. But, we must conclude that there may be many causes of total disability not mentioned in part A, and that in such case the total disability .clause in part B would be vitalized. In *Goldstein v. Standard Accident Ins. Co.*, 236 N. Y. 178, 140 N. E. 235, where a similar, but not identical, contract was before the court it was said:

"We conclude, therefore, as follows: A total disability within the purview of article 2 is a disability that is not the consequence of an injury within the purview of article 1. If disability follows an injury within the purview of article 1, payment is not to exceed the principal sum or a prescribed fraction thereof, except that there may be weekly indemnity 'up to the date of death, dismemberment or loss of sight.'" (p. 183.)

In short, if the payment clause in part A should be amended to read as follows: "The payment in any case specified in the foregoing schedule shall end this policy, but in case the insured suffers a loss not specified in the schedule, and such loss shall cause total or partial disability he shall be entitled to the indemnity set forth in part B," it would, we think, clarify the meaning of the concatenation of words in parts A and B of this contract.

Since, therefore, the amputation of plaintiff's hand was on the date of the accident, not only the weekly indemnity for 202 weeks sued for in the first cause of action, but the weekly indemnity sued for in the second cause of action, must go out of the case.

In the third cause of action plaintiff refers to his first cause of action and makes the same a part of his third cause of action. Plaintiff refers to certain provisions of the policy and alleges that various contentions and controversies as to the authority of the general agent of defendant to receive premiums after the due date thereof and to bind the defendant, and certain other facts therein alleged, raise questions of waiver and estoppel on the part of defendant. That by reason thereof plaintiff is in a dilemma, and there is uncertainty and insecurity to the plaintiff attendant upon such controversy, and plaintiff prays for a declaratory judgment "with such consequential relief as plaintiff is entitled to under the facts and under the law," and for further relief, etc.

Defendant contends that where the questions sought to be de-

termined by an action for a declaratory judgment are involved in another cause of action in the same suit, a declaration is not necessary and will not be made. The determination of this question depends upon the declaratory judgment statute.

In our statute G. S. 1935, 60-3127, it provides:

"In cases of actual controversy, courts of record within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceedings shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for. Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right."

Our statute G. S. 1935, 60-3132, provides:

"This act is declared to be remedial; its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor; and it is to be liberally interpreted and administered, with a view to making the courts more serviceable to the people."

The jurisdiction of the court to entertain an action for declaratory judgment has its source in the statute. We are admonished that the act is remedial in character, and that it is to be liberally interpreted and administered.

The demurrer on the ground of misjoinder of causes of action presents for our determination the following question: In an action upon an insurance policy in which the first two causes of action contain allegations that plaintiff had performed all conditions precedent, that the policy was in effect at the time of an accident and that the defendant had waived nonpayment of the premium due upon the policy and the prayers are for coercive relief, may the plaintiff join a third cause of action under the declaratory judgment act containing the same allegations contained in the first and second causes of action, the prayer of which is for judgment declaring that the premium has been paid or that the company has waived nonpayment?

In the preface to Mr. Borchard's valuable work on Declaratory Judgments, the learned author says:

"Thus the declaratory action, in extending the opportunity for such judgments to all legal relations, inaugurated no startling novelty, but merely recog-

nized that individual and social peace and security are promoted by removing clouds from legal relations whenever, by attack, challenge, or denial, they are placed in doubt and uncertainty. The action implies a recognition of the fact that the social equilibrium is disturbed not merely by an overt violation of private rights, but by a challenge which places them in doubt and uncertainty.

"This has required a·broadening of the conception of 'cause of action' and of the view that the judicial process is merely a means of redress for committed physical 'wrongs.' It required an appreciation of the fact that harm is done and rights are jeopardized by mere dispute or challenge without any physical attack. The mere existence of a cloud, the denial of a right, the assertion of an unfounded claim, the existence of conflicting claims, the uncertainty or insecurity occasioned by new events—these phenomena constitute the operative facts, the cause for action which creates the 'right of action.' The court in rendering a judicial declaration of rights thus becomes an instrument not merely of curative but also of preventive justice.

"The vindication of assailed or challenged rights, the clarification and stabilization of unsettled legal relations, the removal of legal clouds which create peril, insecurity, fears, and doubts—in short, the establishment of social peace in the community, *without* the necessity for prior violence, is the primary judicial function. The belief that the destruction of the *status quo* is a condition of a justiciable issue and judicial relief must be abandoned. That it has been abandoned in practice is evidenced by the fact that by statistical count approximately two thirds of the cases in the English Chancery Reports are initiated by originating summons for a declaratory judgment, which places in issue for conclusive determination a contested legal right. Where such a judgment will serve a useful purpose in clarifying a disputed legal relation, its grant evidences the essence of judicial power and civilized administration, a function performed before one or the other party has acted on his own interpretation of his rights and has perhaps irretrievably impaired or destroyed the economic and social fabric. Such constructive aid is the more necessary in a period characterized by long-term contracts and property relationships, yet subject to rapid change by statute or other event not in the original contemplation of the parties." (p. viii.)

At page 109 of the same work it is stated:

"Reference will hereafter be made to the fact that the court will refuse a declaration where another court has jurisdiction of the issue, where a proceeding involving identical issues is already pending in another tribunal, where a special statutory remedy has been provided, or where another remedy will be more effective or appropriate under the circumstances. In these cases it is neither necessary nor proper to issue the declaration. In some of these cases, discussed in the next chapter, the declaration is refused on jurisdictional grounds. In others, the refusal is justified on discretionary grounds. As already observed, however, it is wrong for courts to decline a declaration on the mere ground that another remedy was available, for declaratory relief was not intended to be exclusive or extraordinary, but alternative and optional. It is only where the court believes that *more* effective relief can and should be

obtained by another procedure and that for that reason a declaration will not serve a useful purpose, that it is justified in refusing a declaration because of the availability of another remedy."

This court has always looked upon the declaratory judgment act as a procedural reform of the greatest importance, and its utility in the removal of legal clouds which create peril, doubt and insecurity has not been fully appreciated. But we think there is no sound purpose in invoking declaratory relief where the only object is the decision of questions already pending before the court in other causes of action. The case of *Railroad Bldg., Loan & Savings Ass'n v. Grayum,* 136 Kan. 418, 15 P. 2d 405, we think may be distinguished. It was based on an unusual state of facts, and the doctrine there laid down is not to be extended. To say that a party who files an action for coercive relief could attach a declaratory rider to determine the same question involved in the primary cause of action, would serve no useful purpose, but on the contrary would clutter up the proceedings and would become an intolerable burden to the courts.

We have indicated our views as to the proper construction of the policy. We think the action of the trial court in sustaining the demurrer to plaintiff's petition on the ground of misjoinder of causes of action was correct.

The judgment is affirmed.