No. 33,983

EDGAR G. HUDSON, *Appellant*, v. THE TRAVELERS INSURANCE
COMPANY, *Appellee*.

(88 P. 2d 1096)

Opinion filed
April 8, 1939.

*Glenn Porter, W. Getto McDonald, Dwight S. Wallace*, all of Wichita; *W. H. von der Heiden* and *C. A. Morgan*, both of Newton, for the appellant.

*C. H. Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, Wayne Coulson* and *Paul R. Kitch*, all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action on an accident insurance policy. The case was here before (145 Kan. 732, 67 P. 2d 593), where this court affirmed a ruling of the trial court sustaining a demurrer to the petition. Afterwards successive amended petitions were filed. In a trial upon the fourth amended petition the court sustained a demurrer to plaintiff's evidence. Plaintiff has appealed.

Briefly stated, plaintiff's petition alleged that defendant is a corporation, with general offices at Hartford, Conn.; that it is engaged in the business of issuing life insurance policies, also accident insurance policies, and that it is authorized to do business in Kansas; that under the date of October 25, 1926, defendant executed to plaintiff its certain accident insurance policy, by the terms of which it agreed to pay plaintiff $1,875 for the loss of either hand occasioned by accident within the terms of the policy, and the further sum of $50 for an operation for the amputation of the hand made necessary by such an accident; that on December 21, 1931, "and during the time that the said policy was in full force and effect," plaintiff sustained an accidental injury which required a surgical operation for the amputation of one hand, by reason of which he was entitled to receive from defendant, under the policy, the sum of $1,975. It further alleged:

"That the plaintiff performed all conditions contained in said policy and the application attached thereto, on his part, or that the first premium and all annual renewal premiums were paid to said agent Northcott from two to six months after October 25 of each year and thereby prompt payment was waived and said policy was in full force and effect on the date that the said plaintiff sustained his accidental injury and loss as aforesaid."

Plaintiff further alleged that defendant refused to recognize the policy as being in force at the time he received his accidental injury, December 21, 1931. The prayer was to recover the sum of $1,975. The policy, a copy of which was attached to the petition as an exhibit, contained this provision:

"This policy is issued in consideration of the premium of twenty and no/100 dollars, for the term of twelve months to commence on the 25th day of October, 1926, and beginning and ending at twelve o'clock noon, standard time of the place where the insured resides, but it may be renewed with the consent of the company, from term to term of twelve months each, by the payment of the premium in advance."

Also, this provision:

"No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company and such approval be endorsed hereon."

The answer contained a general denial, an admission of the residence of the parties, the incorporation of defendant, and of the issuance of the policy sued upon, and contained the following:

"4. The defendant alleges that subsequent to the issuance of said policy as aforesaid, said policy was thereafter renewed from year to year as provided therein with the defendant's consent and by the payment by the plaintiff of the premium of $20 in advance on the 25th day of October, 1930. The defendant expressly denies, however, that the plaintiff paid to the defendant the premium of $20 for the renewal of said policy for the term of twelve months beginning at noon on October 25, 1931, and further expressly denies that said policy or any other policy of accident insurance of this defendant which indemnified the plaintiff against loss through accidental injury was in force on December 21, 1931."

No reply was filed.

At the beginning of the trial it was stipulated that the policy had been issued, and also stipulated that the policy was renewed from year to year. Plaintiff's counsel stated to the court:

"Now, the only thing in issue in this case is whether on December 21, 1931, the policy was in force. The plaintiff contends that it was in force and the defendant says it was not.

"Commencing October 25, 1926, the plaintiff contends that the premiums were never paid on the due date, and were sometimes as long as six months

late, and since the premium was not paid on October 25, 1931, the defendant contends that the policy lapsed, expired by its own terms.

"The plaintiff contends that having accepted the premium payments, after the due date, there was a waiver of the payment of the premium on the due date, and that the accident having happened such a short time after the due date, that plaintiff is entitled to recover."

Plaintiff called as a witness B. H. Northcott, Jr., who testified in substance that he was engaged in the insurance business; that he had an office in the city of Newton; that he displayed signs of the defendant company; that he sold insurance for defendant, and had been doing so since in 1924; that he solicited accident and other insurance for the defendant; that in soliciting such insurance he had an application blank which defendant furnished him; that in selling such insurance he filled out the application, which was signed by the applicant; that in his office he carried a set of books as to accounts of policyholders in reference to their premiums, which he called a ledger, and that in the ledger he had an account listed for plaintiff and that he had written the letter referred to in plaintiff's deposition as exhibit E.

Plaintiff's evidence had been taken by deposition, in which he testified that his home was in Newton, but at the time he was living in New Mexico for his health; that on October 25, 1926, he had a conversation with Mr. Northcott, Jr., about insurance, in which the witness was told about the accident insurance, and he told Northcott to get it for him; that sometime later he saw Northcott and asked about the policy and was told by Northcott that he had it in his safe; that plaintiff paid him $20 for it; that he told Northcott to keep it in his safe; that he never saw the policy. Plaintiff thought he made that payment in December or January; that each year thereafter, up to the fall of 1930, he paid Northcott $20 premium on the policy, but in each instance several months after October 25. He identified a letter written to him by Northcott May 2, 1931, which reads in part:

"Please find herewith attached, statement covering accident policy issued to you last October.

"Will appreciate receiving check for this, as I have advanced the money and am greatly in need of same at this time."

Plaintiff testified that a few days after that he met Mr. Northcott in Topeka and at that time gave him a check for $20. He also identified as exhibit E a letter, dated December 3, 1931, written to him by Northcott, which reads:

"I've tried to see you, tried to call you, Mrs. Northcott has been over twice regarding your accident insurance. I have taken care of this for you, but general conditions will not warrant my carrying the premium very long; in other words, *I'm hard up* and would appreciate a remittance covering premium of $20 or advice from you as to when you might take care of it."

Plaintiff testified that he made no payment after December 3, 1931. Plaintiff further testified that the next day after he was injured, on December 21, 1931, Northcott called to see him at the hospital; that he then offered to pay the premium on the policy to Mr. Northcott and offered him a $20 bill, but that Northcott refused to accept it and told him that he had sent back his premium receipt "last Friday." Plaintiff further testified that in the spring of 1929 or 1930 he sustained an accident for which he was paid partial disability for three weeks under the policy; that this payment was handled through Mr. Northcott. This was all the evidence offered on behalf of plaintiff.

In this court it is argued on behalf of appellant that the testimony of plaintiff to the effect that because in each instance he had paid the premium to Northcott from two to three months after the due date that defendant had waived payment in advance, and because of this and of the tender of the premium to Northcott the day after plaintiff was injured the policy was in force on the date of his injury. The trial court was of the opinion that the evidence did not support that contention. Our judgment accords with that of the trial court. With respect to these delayed payments the most plaintiff's evidence tends to show is that each year, prior to October 25, 1931, Northcott had advanced to the defendant company the premium on its due date, and that he personally looked to plaintiff for repayment. There is nothing in this evidence to indicate that the defendant knew Northcott was extending credit personally to plaintiff. The letter of December 3, 1931, from Northcott to plaintiff tends to show that Northcott had advanced the premium to defendant on October 25, 1931, and that plaintiff was indebted to Northcott personally for the amount. Defendant had denied in its answer that it had received that premium. This was not controverted by a reply, nor by evidence. There is no proof that premium had been paid to defendant by anyone. Plaintiff paid no attention to this letter of December 3, 1931, until after his accident.

Appellant really seeks to have us infer that Northcott was a general agent of defendant with authority to waive the payment

of premiums in advance. This we cannot do. The policy specifically provides for a renewal of the policy, with the consent of the company, from term to term of twelve months each *by payment of the premium in advance*. It also provides that "No agent has authority to change this policy or to waive any of its provisions," and that no change of the policy should be valid unless approved by an *executive officer*, and such approval be endorsed on the policy. Nothing of that kind was done. More than that, plaintiff called Northcott as his witness and elicited from him only that he was an agent to solicit policies for defendant. Under the statute (G. S. 1935, 40-239) the authority of the agent must be in writing. If plaintiff desired to show that he had greater authority than a soliciting agent he might very well have asked the witness respecting his written authority; but no question was asked to elicit that information. The court should not be asked to assume Northcott's authority was greater than that indicated by plaintiff's examination of him.

Appellants cite *Ocean Accident & G. Corp. v. Emporia Tele. Co.*, 139 Kan. 106, 29 P. 2d 1084, and *Riddle v. Rankin*, 146 Kan. 316, 69 P. 2d 722. As we read those cases the principles dealt with there are not applicable to the situation here presented. We have examined all of the other cases cited by appellant and find nothing in any of them contrary to the views above expressed.

In this court appellant raises a question not presented in the pleadings, evidence, statement of counsel, or briefs to the court below, and not ruled upon by the trial court. Had it been presented there we do not know that plaintiff's position would have been improved. The general rule is that this court does not review questions not presented to or passed upon by the trial court. We see no reason to modify that rule here.

We find no error in the record. The judgment of the court below is affirmed.