432 F.2d 182
 NEW YORK UNDERWRITERS INSURANCE COMPANY, Appellant,
v.
UNION CONSTRUCTION COMPANY, a corporation, John Smith,
individually, and John Smith, d/b/a John Smith Trucking
Company, Loren Albrecht, Countryside Casualty Company, an
insurance corporation, and St. Louis-San Francisco Railway
Company, a corporation, Appellees.
 No. 29-70.
 United States Court of Appeals, Tenth Circuit.
 Oct. 6, 1970.
 
 Leonard O. Thomas, Kansas City, Kan. (Larry E. Benson, and Weeks, Thomas, Lysaught, Bingham & Johnson, Kansas City, Kan., of counsel, with him on the brief), for appellant.
 Thomas E. Deacy, Jr., Kansas City, Mo. (Deacy & Deacy, and D. Lee McMaster, Kansas City, Mo., with him on the brief), for St. Louis-San Francisco Ry. Co.
 McAnany, Van Cleave & Phillips, and John J. Jurcyk, Jr., Kansas City, Kan., on the brief, for Loren Albrecht, and Countryside Cas. Co.
 Richmond M. Enochs, Overland Park, Kan. (Wallace & Saunders, and Frank Saunders, Jr., Overland Park, Kan., on the brief), for Union Const. Co.
 Before LEWIS, Chief Judge, SETH and HICKEY,[1] Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 This is a declaratory judgment action brought by New York Underwriters Insurance Company to have determined whether it was required, under a policy of insurance it had issued, under Kansas law to defend a suit brought in the Kansas State court against some of the defendants herein. The trial court decided that plaintiff had a duty to defend, and this appeal was taken.
 
 
 2
 The State court suit arose from a railroad crossing accident wherein the railroad as plaintiff alleged that it incurred property damage in the approximate amount of $280,000.00. The railroad company, St. Louis-San Francisco Railway Company, sought to recover these damages from the owner of the truck involved in the accident, Loren Albrecht; from the Union Construction Company, for whose job the hauling was being done; and from John Smith, d/b/a John Smith Trucking Service, who had hired the truck from its owner to do the hauling for Union Construction Company. Also named as a defendant was Countryside Casualty Company, the insurance carrier for Loren Albrecht, the owner of the truck.
 
 
 3
 The basic issue on appeal concerns the finding by the trial court that under plaintiff's policy No. 34, John Smith was a named insured, and thus the policy in issue covered trucks he individually hired from others, including the truck hired from Albrecht which was involved in the accident.
 
 
 4
 The policy No. 34 was written to cover hired trucks, and it named 'John Smith and Donald Davis d/b/a Smith & Davis Trucking Co.' as the named insured. The truck concerned was hired by John Smith individually, there being no partnership at the time of the hiring nor at the time of the accident, and there apparently never was one. Thus the issue arose as to whether the policy covered the truck so hired by John Smith, which would be determined by whether he individually was a named insured.
 
 
 5
 The trial court found: 'The intention of the parties here was clearly to cover, under the provisions of policy No. 34, the trucking operations conducted by John Smith by means of non-owned, leased or hired vehicles.'
 
 
 6
 The trial court also found that the plaintiff insurance company, when the policy was written, was fully cognizant of the operations of John Smith's trucking business. This is based principally on the testimony of the agent of plaintiff who wrote the policy. He testified that he personally knew John Smith and Donald Davis, that he visited with Mr. Smith at least once each month at his place of business, and was familiar with his business and Donald Davis' business. The witness described how Smith and Davis sometimes worked together and sometimes separately. He also stated that he suggested the policy in question for hired vehicles be written 'John Smith and Donald Davis d/b/a Smith and Davis Trucking Company,' because he knew the nature of their operations. The agent testified that with the several individual policies for the two men separately and the one in issue he intended to cover Mr. Smith's activities. The following appears in the record during the questioning of Mr. Schneider, the agent of plaintiff:
 
 
 7
 'Q. And, it was at your suggestion, was it not, that the hired and non-owned vehicle coverage be written the way it was written in this policy 0034? 'A. Correct. 'Q. This was your suggestion to Mr. Smith and Mr. Davis; isn't that right? 'A. Correct. 'Q. And, you told them that it would cover them, and each of them, for any liability that might be imposed upon them by virtue of hired or non-owned vehicles, didn't you? 'A. Correct. 'Q. And, you intended that it cover Mr. Smith? 'A. (Nods head.) 'Q. And, or Mr. Davis, is that right? 'A. Correct. 'Q. And, this is the way that you elected to have Hartford write this insurance to accomplish that purpose? 'A. Correct. 'Q. And, the same thing was true, and the same facts existed on September 29, 1964? 'A. Correct. 'Q. They were operating then the same way when hired and non-owned coverage was issued to them by Hartford; isn't that correct? 'A. Correct. 'Q. And, you knew all along the nature and mode of their operation? 'A. Right.'
 
 
 8
 Policy No. 34 was written after the agent suggested to the two men that the prior policy be cancelled and that instead a separate policy be issued to the trucks of Smith, § separate policy for the trucks of Davis, and a third policy, No. 34, for the hired trucks and two jointly owned trucks. The trial court found that Smith relied on the advice of the agent in the rearrangement of the policies.
 
 
 9
 The agent in his Daily Report on No. 34 stated that the change from the prior policy was to eliminate from it 'own auto coverage.' Of the changes in the policy the trial court found: 'These circumstances bring strong corroboration to the contention of defendants that the plaintiff intended by making this change to afford coverage for Smith on all hired vehicles.'
 
 
 10
 Thus at the time the policy was issued the record shows that the agent intended to provide coverage for trucks hired by Smith or by Davis. This was to be provided by the description of the named insured in the policy. Thus the trial court found that Smith was a named insured. The trial court found:
 
 
 11
 'That Schneider was aware of the fact that John Smith hired vehicles on occasions and that Policy No. 637 C 800034 was written by Schneider on behalf of plaintiff for the express purpose of affording liability insurance coverage to John Smith for hired and for non-owned vehicles.'
 
 
 12
 The record contains evidence of events after the writing of the policy which also shows the purpose of the policy and the intention of the carrier. The most significant of these is an exhibit which is a home office memorandum of plaintiff referring to the policy in issue and to the insured. This memorandum is dated some eight months before the accident and states in part: 'Risk is no longer a partnership, WH and non-own policies written in name of partnership should be cancelled.' At this time the home office knew that the Smith and Davis Trucking Company was not a partnership. As indicated above the writing agent knew it was not a partnership from the outset, but the home office had marked his Daily Report to designate the risk as a partnership although he had not so designated it. No action was taken to cancel, and the coverage continued under policy No. 34. This policy was renewed in the same form after the accident.
 
 
 13
 Also after the policy was written a certificate of insurance was furnished to Union Construction Company for whom Smith was hauling rock. The certificate was required by the company for the work being done when the accident occurred involving the truck he hired. The trial court found that Union Construction Company relied on the certificate and representations of the agent that the trucks used on the job were insured.
 
 
 14
 The finding and conclusion of the trial court that the knowledge of the agent was knowledge to the company as to the identity of the named insured and the meaning of the designation used in the policy is supported by the records and the authorities.
 
 
 15
 James Schneider, the agent who wrote the policy and who was a witness, was employed at the time by Robert Reynolds or The Reynolds Agency which held an agency contract from New York Underwriters Insurance Company. The trial court found that James Schneider and Robert Reynolds were at the time the policy issued '* * * agents for New York Underwriters Insurance Company, duly authorized to issue policies, binders, endorsements and certificates of insurance for and on behalf of said company.' The trial court concluded that the plaintiff was bound by the knowledge of its agent as to the identity of the insured and the nature of the enterprise insured or of the business of the individuals insured.
 
 
 16
 The record shows that the agent selected the description or terminology for the named insured in the policy based upon his knowledge of what was needed and intended during his revision of the coverage for Smith and Davis. As the trial court found under the Kansas decisions, the authority of the agent under these circumstances was such as to charge the company with the knowledge he had, and to bind it to what he intended as to the named insured.
 
 
 17
 This is not the typical case where there is asserted a waiver or variation of the provisions of a policy. Instead it is a question as to the meaning of the description of the named insured which was prepared by the agent as part of the writing of the policy or policy application.
 
 
 18
 The Kansas Supreme Court in Casey v. Aetna Casualty & Surety Co., 205 Kan. 495, 470 P.2d 821, held that insurance policies are to be construed in favor of the insured and against the insurer where there is doubtful language in the policy or provisions of ambiguous or conflicting meaning. The standards for determining whether an ambiguity exists are there also set forth. See also Simonich v. Wilt, 197 Kan. 417, 417 P.2d 139, and Kansas Farm Bureau Ins. Co. v. Cool, 205 Kan. 567, 471 P.2d 352. The facts of the case before us, as the trial court held, bring the provision in question within this rule and the admission of parol evidence was proper.
 
 
 19
 The Kansas decisions concern for the most part express policy provisions which the insured asserts were waived by the agent, or where the agent had knowledge of facts showing a policy provision was violated by the insured. In Pettijohn v. St. Paul Fire & Marine Ins. Co., 100 Kan. 482, 164 P. 1096, the agent had knowledge of the fact the insured had procured additional fire insurance contrary to an express provision of the policy. The court found the agent to have limited authority and could not waive the prohibition in the policy. The court there said:
 
 
 20
 'It has been held that a company may be bound by the knowledge and acts of a local soliciting agent as to past or present conditions (citing cases); but such local agent is without power to waive future conditions, and the company cannot be estopped by the knowledge of the agent that the assured intended thereafter to take other insurance.'
 
 
 21
 See also West v. Metropolitan Life Ins. Co., 144 Kan. 444, 61 P.2d 918. In Hudson v. Travelers Ins. Co., 149 Kan. 528, 88 P.2d 1096, the Kansas court on a renewal premium issue found the agent's authority did not extend to permit him to waive the advance payment of premiums. The court in Henning v. American Ins. Co., 108 Kan. 194, 194 P. 647, had expressed the same position. See the authority standards set out in Service v. Pyramid Life Ins. Co., 201 Kan. 196, 440 P.2d 944, where the court relied upon the agent's testimony as to his authority plus the general terms of his agency contract to permit a waiver of an express provision.
 
 
 22
 The trial court in the case before us found that the knowledge and intention of the agent on the meaning of the description of the named insured in the policy was binding on the company. Thus the court found that the agent for these purposes had such authority. We have found no Kansas case which is concerned directly with the construction of the named insured provision but from a consideration of the above cited express provision cases, we hold that the trial court's determination of the State law on the point was properly made.
 
 
 23
 The record supports this position, although a written agency contract was referred to in the testimony but was not put in evidence. The agent clearly had authority to describe the named insured and his description and intent was that of the company. The record is clear as to this meaning and intent.
 
 
 24
 We find no error in the refusal of the trial court to enter a default judgment against the nonappearing parties including the insured John Smith.
 
 
 25
 The insured Smith was sufficiently described in the State negligence suit to invoke the duty of plaintiff to defend.
 
 
 26
 In view of the determination of these issues, it is not necessary to discuss the other points raised by the parties.
 
 
 27
 Affirmed.
 
 
 28
 HICKEY, Circuit Judge, did not participate in the decision.
 
 
 
 [1]
 Judge Hickey, since deceased, heard the arguments in this case but did not participate in this decision